## SINCLAIR PRAIRIE OIL MARKETING CO. v. STATE BOARD OF EQUALIZATION.

No. 25216.   June 25, 1935.

Edward H. Chandler, Summers Hardy, Paul B. Mason, and Frank Orr, for plaintiff in error.

J. Berry King, Atty. Gen., and F. M. Dudley, Asst. Atty. Gen., for defendant in error.

CORN, J.  The plaintiff in error presents to this court an appeal from the State Board of Equalization in equalizing, adjusting, and correcting the valuation of property for the year of 1933.  The case involves five complaints of the Sinclair Prairie Oil Marketing Company, a corporation, filed before the State Board of Equalization, numbered from 92 to 96, inclusive, and consolidated and heard all together by said board.  The complainant was aggrieved by the valuation placed upon its steel crude oil storage tanks in Carter, Creek, Lincoln, Pawnee, and Washington counties.

The board fixed a flat rate of nine cents per barrel on the steel crude oil tankage, under a resolution of said board establishing a uniform basis for the valuation and assessment of steel crude oil tankage throughout the state, said resolution being as follows:

"Be it further resolved, that it is the intention of the board to so equalize, adjust, and correct the county assessments of steel crude oil tankage so as to make that class of property assessed at a maximum value of nine cents per barrel on tankage over seven years old and thirteen and one-half cents per barrel on tankage under seven years old."

It appears from the record that all but eleven of the 458 tanks owned by the complainant in these counties were over seven years old and that the nine-cent rate applied on practically all of its tankage. The board increased the valuation of its crude oil in storage 40 per cent.

At the hearing upon the complaint, the board changed the valuation on crude oil in storage from the increase of 40 per cent. to 32 per cent., and dismissed the complaints as to the tankage.

The complainant failed to offer any evidence at the hearing that was of any value or assistance to the State Board of Equalization in determining the true value of the tanks.  Its witnesses were unable to give an estimate of the cost of construction of any of the tanks in question, but based their valuation of the property at what the tanks would bring as salvage or junk, or what they would be worth for the purpose of cutting down and removing to some other location for reconstruction.

This is by no means a proper way to determine the fair cash value of property at a voluntary sale, at which property is required by the Constitution and statutes of this state to be assessed.  The Tax Commission produced witnesses at the hearing who testified as to the cost of construction of the steel tanks of various capacities, and one of these witnesses was qualified as an expert in making appraisals of that particular kind of property, and he had visited the tank farms and made an inspection of the property.  He testified that the value of the tanks ranged from 70 to 85 per cent. of the value of new tanks; that the com-

plainant was a going concern and that said tanks were in use by the company and were indispensable to the successful operation of the business. It was established at said hearing that the cost of old tanks, reset and rebuilt, was as follows.

A 55,000 barrel capacity tank, from $18,903 to $22,400.

A 37,500 barrel capacity tank, from $11,100 to $11,331.

That new tanks for the storage of crude oil had been constructed by certain companies during the years 1930 to 1931 at costs as follows:

A 10,000 barrel capacity tank, from $5,617.00 to $9,749.00.
30,000 barrel capacity, $16,660.00.
36,478 barrel capacity, $16,687.00.
Two 80,000 barrel capacity tanks, $92,814.93.
Two 80,000 barrel capacity tanks, $72,608.62.
Two 80,000 barrel capacity tanks, $73,646.12.
Two 50,000 barrel capacity tanks, $44,999.38.
One 50,000 barrel capacity tank, original cost $22,-
750.00, and additional cost of $10,657.93 incident to removing and resetting the same.

From these figures it may readily be seen that a rate of nine cents per barrel tankage is far below the actual cost of construction of such tanks, and so long as such tanks are usable, the valuation applied to them by the State Board of Equalization is not excessive.

The assignments of error of the plaintiff in error are as follows:

"The equalized value of the plaintiff in error's property as fixed by the State Board of Equalization was in excess of the fair cash value thereof estimated at the price it would bring at a fair voluntary sale.

"The State Board of Equalization adopted an arbitrary system of valuation without regard to and in violation of the principle of uniformity and equality required by the Constitution of Oklahoma and the Fourteenth Amendment of the Constituion of the United States."

The first assignment of error needs no further discussion than we have already given to the valuation of the tankage as fixed by the State Board of Equalizaion. As to the latter assignment of error, it is difficult for us to see how the principle of uniformity and equality is violated by the method or system used in equalizing the assessment of said tankage so long as the equalized value does not exceed the fair cash value of the property. The plaintiff in error suggests that a more correct method of assessing this property would be to fix and assess the value of each tank individually, having regard for its age and its particular condition. In dealing with a large number of tanks varying in age and varying slightly in condition, the method used by the State Board of Equalization seems to strike an average which approximates a true valuation of the group as a whole.

No particular method of valuation is prescribed by the Constitution or the statutes for the guidance of the Board of Equalization in determining the value of property, and the method used in this case is immaterial, so long as it does not appear that the value so determined and fixed by the board does not exceed the fair cash value of the property. The same method was applied to all tankage in the state, thereby effecting uniformity of valuation, and equally distributing the tax burden upon that class of property.

Section 8, article 10, of the Oklahoma Constitution provides that:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. * * *"

In reviewing the assessment of the State Board of Equalization, the presumption exists in favor of the correctness of the determination of the value fixed by the board. See In re Kansas City Southern Ry. Co., 168 Okla. 495, 33 P. (2d) 722, and authorities therein cited.

Having examined the record in this case, and it appearing that the complainant has failed to show that its property was valued above its fair cash value, the order of the State Board of Equalization is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BUSBY, WELCH, and GIBSON, JJ., concur. RILEY, BAYLESS, and PHELPS, JJ., absent.