Appeal of NATIONAL BANK OF TULSA from an Order of the Board of Equalization of Tulsa County, Oklahoma.

No. 37383.

Supreme Court of Oklahoma.

Jan. 22, 1957.

Rehearing Denied Feb. 26, 1957.

Application for Leave to File Second Petition for Rehearing Denied June 18, 1957.

J. Howard Edmondson, County Atty. of Tulsa County, Donald D. Cameron, Chief Civil Assistant, Tulsa, for plaintiff in error.

Jos. L. Hull, James E. Bush, Ralph L. Abercrombie, Tulsa, for defendant in error.

Joe Stamper, Antlers, R. F. Barry, R. S. Fellows, J. C. Pinkerton, Tulsa, C. N. Haskell, Gerald B. Klein, Henry L. Fist, Floyd L. Rheam, Marvin T. Johnson, A. C. Saunders, Tulsa, amici curiae.

DAVISON, Justice.

This is an appeal by the Tulsa County Assessor from a judgment, of the District Court of Tulsa County, fixing the valuation of the National Bank of Tulsa Building for 1953 ad valorem tax purposes. The trial court heard the matter de novo on appeal by the National Bank of Tulsa from a judgment of the Tulsa County Equalization Board. The parties will be referred to as "the assessor" and "the bank".

The bank duly filed a protest to the action of the assessor in raising the assessed valuation of its real property to $1,846,950 for the year 1953 from its previous valuation of $1,522,930. The protest was heard and denied by said equalization board, from which judgment and order, the bank appealed to the district court. This appeal is from the judgment of the district court reducing the assessed valuation for said year of 1953 to $1,266,324. To better understand the

points at issue, it is essential to compare the two valuations. The assessor and the district court both fixed the assessed valuation at 30% of what each found the market or sound value of the property to be. There is no important difference in the market value each placed on the lot, approximately $1,000,000. The conflict arises over the cash or market value placed on the building which was more than 25 years old and contained 322,108 square feet. The county assessor and the district court both determined the market value to be the cost of reproduction less depreciation. The assessor found the cost of reproduction to be $23 per square foot and the depreciation to be 2% per year limited to a total of 15 years or 30%. The district court found the cost of reproduction to be $20 per square foot and depreciation to be 2% per year limited to a total of 25 years or 50%. An affirmance of the judgment confirms the court's computation; a reversal reinstates the assessor's figures. The two modes of computation result in the assessed valuations hereinabove set out. Both sides of the controversy have been exhaustively briefed by the parties and by amicus curiae, followed by oral argument in open court.

The bank's protest to the assessed valuation was founded upon the following allegations of error:

"(1) That it was the duty of the Assessor to seek to have assessed the same class of property at a uniform valuation throughout the county, but the valuation proposed to be fixed by said Assessor is not uniform and is at a higher rate per square foot of floor space than other buildings of the same class or character within said county, and that the valuation placed thereon by said Assessor is in excess of the value placed by him on other buildings of the same class in the City of Tulsa and is discriminatory and unjust.

"(2) That the valuation placed by said Assessor upon the land of this complainant, exclusive of improvements thereon, is not uniform with the valuations placed by said Assessor upon other land in the same vicinity and of similar character as the land of this complainant, and is at a higher rate than that fixed by the Assessor upon adjoining lands in the same vicinity and having the same general elements of value as the land of this complainant, and that such assessment is discriminatory and unjust and should be equalized by this board with the assessed values placed on such other lands."

Because there had been no such sales, the market value of the bank's property could not be established from evidence of sales of other pieces of property, comparable in size, type and value. Consequently, it was necessary to adopt other methods by which the computation could be made. Two of such methods most nearly accurate and reliable are shown by the record to be the reproduction cost less depreciation method and the capitalization of income method. The record herein is replete with testimony of expert witnesses of the value of the bank's property computed in each of the two methods and of the value of other similar properties in the same area. Similar evidence was lacking in the case of Mid-Continent Bldg. Co. v. Board of Equalization of Tulsa County, 184 Okl. 525, 88 P.2d 626, 627, wherein it was said that, an "assessment at a higher valuation than other real estate of like grade and quality within the County would constitute a violation of appellant's constitutional rights." That pronouncement was founded upon the earlier opinion in the case of State v. State ex rel. Shull, 142 Okl. 293, 286 P. 891, 900, wherein it was pointed out that "the very purpose and intent of the Legislature in creating an equalization board was for the purpose of equalizing the taxes of the taxpayers in the respective counties * * *".

■ When, however, no question is raised as to the comparative assessed valuations of separate but similar properties in the same class, the inquiry resolves itself into one solely dependent upon the relationship between the assessed and market

values of the subject property. The latter situation obtained in the cases of In re Assessment of Property of Western L. & P. Corp., 169 Okl. 53, 35 P.2d 946; Sinclair Prairie Oil Marketing Co. v. State Bd., 173 Okl. 74, 47 P.2d 120; Sinclair-Prairie Oil Co. v. State, 169 Okl. 334, 37 P.2d 298; Sinclair Prairie Oil Co. v. State, 174 Okl. 109, 50 P.2d 150; and Stanolind Crude Oil P. Co. v. State Bd., 174 Okl. 320, 49 P.2d 1089, and others cited by the assessor and by amicus curiae. All of the immediately above cited cases reach the same conclusion that,

"No particular method of valuation is prescribed by the Constitution or the statutes for the guidance of the Board of Equalization in determining the value of property, and the method used is immaterial so long as it does not appear that the value so determined and fixed by the board exceeds the fair cash value of the property." Sinclair Prairie Oil Co. v. State, 174 Okl. 109, 50 P.2d 150, 151, supra.

Where it is impossible to comply with the provisions of Art X, sec. 8 of the Oklahoma Constitution requiring property to be assessed "at its fair cash value" and with the equal protection clause of the 14th Amendment to the Federal Constitution, the taxpayer "is to have his assessment reduced to the percentage of that value at which others are taxed even though this is a departure from the requirement of the statute. The conclusion is based on the principle that where it is impossible to secure both the standard of the true value, and the uniformity and equality required by law, the latter requirement is to be preferred as the just and ultimate purpose of the law." Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 192, 67 L.Ed. 340, 28 A.L.R. 979, which said case was cited with approval in the case of State v. State ex rel. Shull, supra.

 The grounds for protest, as quoted above, raised only the issue of the uniformity and equality of the assessment values of the bank's property as compared with that of other properties in the same class. The evidence included testimony of witnesses experienced in constructing buildings of the type involved, in appraising such property, and in computing investment values based upon income. The witnesses placed a reproduction value on the building varying from $18 to $23 per square foot and also testified as to the estimated reproduction costs of other similar buildings in the same area. The value of $20 per square foot fixed by the trial court in the judgment was well within the limits established by such testimony, and was in harmony with the investment value and appraised value. Also supported by the evidence was the finding of depreciation at the rate of 2% annually, limited to a 25-year maximum. The overall 50% limit of depreciation coincided with the figure used by the assessor in valuing other structures in the county generally.

On the surface, there might seem to be much confusion in the numerous decisions of this court dealing with the weight to be given to the decision of an equalization board in fixing the assessed valuation of property, when said decision is reviewed on appeal. However, it must be borne in mind that, through the years, legislative enactments have changed the type of appeal from the board to a court, alternating between an appeal on the record made before the board and an appeal for trial de novo in the appellate court. Underlying the effect of the then existing mode of appeal, is the ever present question of whether the action of the board was legislative, administrative or judicial or partook of the nature of each. This opinion need not be burdened with a lengthy discussion of that matter since it was exhaustively treated in the opinion in the case of In re Assessment of Kansas City Southern Ry. Co. 168 Okl. 495, 33 P.2d 772, delivered by Mr. Justice McNeill. Nor is it necessary that we discuss and catalog individually each case which has been heretofore decided, wherein the presumption of correctness of the decision of the equalization

board has been at issue. Our consideration of the question herein must, of necessity, be in the light of the statutes as now in effect.

An assessment of property being made or raised by the county assessor and a protest thereto lodged by the taxpayer, a presumption arises that the official acts of the assessor were properly performed and the assessment correct. After a determination by the county equalization board and an appeal to the district court, there still remains the original presumption of correctness of the assessment because the trial on appeal is de novo. Although not necessary, that presumption of correctness of the value fixed by the assessor is reaffirmed, even where the board's decision was adverse to the assessor, by 68 O.S.1951 § 15.42. The reason for such presumption, irrespective of statute, when the appeal is on trial de novo was given in the case of In re Daniels' Omitted Property, 108 Okl. 195, 235 P. 543, 545, as follows:

"Upon the hearing before the board of equalization the question is this: Has the assessor placed an excessive valuation upon the taxpayer's property? There the taxpayer affirms the facts stated in the question and the state denies them. The taxpayer and not the state seeks affirmative relief. The burden, of course, is upon him who affirms and seeks relief, and that is the taxpayer. Upon appeal to the court for a trial de novo, the burden would remain with him no matter what was the decision of the board."

As in other types of appeal to the district court for trial de novo, trial is had upon the issues raised and presented by the pleadings filed with the original court or board (in this case, by the protest filed with the equalization board). Section 15.42, supra, also reaffirms that established rule of procedure. When an appeal is taken from the action of the district court to this court the same situation, as to issues reviewable, obtains (by rule of law and by provision of the same statute). And when those pleadings "set up or tender issues of fact to be determined in trial de novo upon the evidence," the trial court is not justified in sustaining a demurrer thereto. In re Commercial Credit Co., 193 Okl. 497, 145 P.2d 750, 751. On review by this court, the judgment of the district court carries with it the same presumption of correctness as attaches to any of its other judgments rendered in proceedings governed by equitable principles and will not be disturbed for insufficiency of the evidence to support it where it is not against the clear weight thereof. But,

"An appeal to the district court from the county board of equalization as authorized by 68 O.S. 1941 § 15.42 is a special statutory proceeding, governed by equitable principles, and this court will modify or reverse the judgment of the district court on such appeal on the question of valuation where the same is clearly against the weight of the evidence or the wrong formula has been used in fixing the valuation." Dolese Bros. Co. v. Nichols, 196 Okl. 508, 165 P.2d 982.

When therefore, the district court, on trial de novo, renders a judgment sustaining and confirming the decision of the county equalization board, which in turn had affirmed the assessed valuation determined by the county assessor, this court, on appeal will not disturb the valuation so fixed "where it does not appear that error was committed by the assessor or board in method by which they arrived at valuation, nor that valuation is unjust or contrary to evidence." In re Protest of Taxpayers of Town of Nichols Hills, 198 Okl. 500, 180 P.2d 157. Such was the meaning intended to be expressed by the syllabus in that case although it failed to specifically state that the judgment of the equalization board had been affirmed by the district court on appeal and trial de novo.

Under the provisions of the 1933 Act, Ch. 115, p. 247, the appeal to the district court was on the record made in the hearing before the board, rather than for trial de novo. Thereunder, the same presumption of correctness was accorded the deci-

sion of the board, McBirney v. Bd. of Equalization, 184 Okl. 564, 89 P.2d 314 as, in the Town of Nichols Hills case, was accorded the judgment of the district court affirming the decision of the board. The reason is simple. The presumption of correctness inheres in the order, decision or judgment of the forum where the witnesses appeared, the testimony was taken, and the record and findings of fact were made. That was the primary reason for the rule followed in those cases which came to this court on appeal from, and upon the record made in, the State Equalization Board. Among them are the above cited cases of In re Assessment of Property of Western Light & Power Corp.; Sinclair Prairie Oil Marketing Co. v. State Bd.; Sinclair Prairie Oil Co. v. State; Stanolind Crude Oil Purchasing Co. v. State Bd. and others.

We conclude that, where a taxpayer's protest to the assessed valuation of his property as fixed by the county assessor is heard by the county equalization board and its decision is appealed from, to the district court for trial de novo under the provisions of 68 O.S.1951 § 15.42, the judgment of the district court whether affirming the valuation fixed by the assessor or vacating it and revaluing the property, will not be vacated for insufficiency of the evidence to support it when it is not against the clear weight thereof.

The record herein discloses ample evidence to support the judgment as is more fully detailed above.

The judgment is affirmed.

CORN, V. C. J., and WILLIAMS, JACKSON and CARLILE, JJ., concur.

HALLEY, J., concurs specially.

WELCH, C. J., and JOHNSON and BLACKBIRD, JJ., dissent.

HALLEY, Justice (specially concurring).

In my opinion the trial judge was correct in placing the replacement value at twenty dollars per square foot but I think the depreciation should have been fixed at one and one-third per cent annually for thirty years rather than two per cent annually for twenty-five years. This building will stand for seventy-five years and in my opinion many more. To stop depreciation at the end of fifteen years as was done by the assessor would not be equitable.