In the Matter of the Appeal of ALLRIGHT PARKING SYSTEM, INC., A Corporation, from an order of the County Board of Equalization of Tulsa County, Oklahoma, Allright Parking System, Inc., Plaintiff-in-Error,

v.

The COUNTY BOARD OF EQUALIZATION OF TULSA COUNTY, Oklahoma, Defendant-in-Error.

Nos. 39604, 39608.

Supreme Court of Oklahoma.

Sept. 25, 1962.

Robert J. Hudspeth, Austin, Tex., Charles A. Whitebook and Windell D. Knox, Tulsa, for plaintiff in error.

David Hall, County Atty., Donald D. Cameron, Asst. Co. Atty., Tulsa, for defendant in error.

BLACKBIRD, Vice Chief Justice.

These consolidated appeals concern a protest by Allright Parking System, Inc., to the Tulsa County Assessor's assessment of ad valorem taxes on a parking lot property it owns. The property is legally described as Lots 1 and 2 of the Original Town of Tulsa. These adjoining lots form an oblong land area located near the heart of Tulsa's downtown business district, on the southwestern corner of the intersection of Third Street and Boulder Avenue, with the area's front, or east, side extending along Boulder Avenue a distance of 150 feet, and its north side extending along Third Street a distance of 140 feet, to a paved alley bisecting the block between Third and Fourth Streets. The two-lot area involved is covered with asphalt paving and the only building thereon is a small one-story temporary type of structure used as the parking lot office, or station.

Allright Parking Systems, Inc., hereinafter referred to merely as "Complainant", purchased the parking lot property in 1957, at a net price (less real estate broker's commission) of $304,000.00. In 1958, the then County Assessor proposed to place an assessed valuation of $127,500.00 on the land and $110.00 on the parking station, but he omitted giving complainant the notice, required by statute, of this proposed increase in the property valuation, and upon subsequent petition to the Board of Tax Correction of Tulsa County, an assessment for the property of $70,000.00 was agreed upon, and ordered put into effect.

In 1959, a new County Assessor also proposed to assess the parking lot area at $127,500.00, less a general 20% reduction he allowed that year on the assessments of all downtown Tulsa real estate, but he, too, failed to give complainant the required notice of such increase, and again, the assessed value was fixed at $70,000.00 in proceedings before the Tulsa County Board of Tax Correction.

In 1960, the County Assessor assessed the land at $91,200.00, and the parking station at $1,370.00, thus increasing the total assessed valuation from $70,000.00 to $92,570.00. Of this proposed increase, complainant was given notice. After its protest to said increase was heard before the County Board of Equalization, and denied by that body, complainant appealed the Board's ruling by filing an initial pleading entitled "Complaint" in the District Court to commence the present court action.

At the District Court trial, the County Assessor testified that he had arrived at the figure of $91,200.00, as the land area's assessed value, by adopting the parking lot's 1957 net sale price of $304,000.00, as its fair cash value, and computing 30% of that.

Complainant's position was that the $304,-000.00 which the Assessor thus adopted as the land's fair cash value was greatly in excess of its true cash value as of the year 1960. To support this contention, complainant relied principally upon an investigation and survey one of its witnesses, M. W. Turner, who qualified as an expert on Tulsa real estate values, had made. By comparing the parking lot property involved, with other parking lot properties in downtown Tulsa, as to location, assessed valuation, size, parking fees charged, etc., Mr. Turner concluded that the fair cash value of said property in 1960 was only $166,400.00. One other witness for complainant testified the property's value was $160,000.00; and it was stipulated that another realtor, if called to testify, would concur in the latter estimate.

Complainant also elicited testimony from its witness, Turner, calculated to show, among other things, that the subject property's 1957 sale price was an unsound basis from which to calculate its 1960 fair cash value, because of certain local conditions that had changed during that three-year period, having the effect of decreasing the property's value as a parking lot.

It was apparently the County Assessor's position at the trial that a correct estimate of the subject property's fair cash value should not be based on the value of other parking lots with varying characteristics such as location, income, size, etc., but that a more accurate basis for such determination was the value of other lots—regardless of the type of business for which they were used—in the same relative location to the heart of the city. In this connection, complainant's witness, Mr. Cagle, testified that the two corners at which Fourth and Fifth Streets intersect Main Street are considered the "heart" of downtown Tulsa "business wise" and are the "hundred per cent locations." By an exhibit introduced in evidence, it was shown that lots in the blocks bounded by both of the streets intersecting at those two corners have assessed valuations ranging from $480.00 to $2160.00 per front foot.

At the close of the trial, the district court (hereinafter referred to as the "trial court")

entered judgment sustaining the complaint to the extent of ordering the assessed valuation of the land reduced from $91,200.00 to $90,000.00. After separate motions for a new trial, filed by both the complainant and the County Assessor, had been overruled, the separate appeals consolidated herein, as aforesaid, were perfected.

In its appeal, complainant represents the evidence to be undisputed that the ninety-thousand-dollar, or six-hundred-dollar per front foot, value at which the trial judge found the parking property should be assessed, is greatly in excess of the assessed values that the undisputed evidence shows other downtown parking lots have. It contends that in view of this fact, and the County Assessor's admission that his aforementioned arbitrary assessment for 1960 was based entirely on the sale price of the property in 1957, and in further consideration of the undisputed evidence showing that, during the three years intervening between said sale and the 1960 assessment, certain changes have occurred in the vicinity of the property adversely affecting its value as a parking lot, the assessment was erroneous (as the trial court found); and the valuation ordered by the trial court is erroneous as a matter of law.

On the other hand, the County Assessor contends that the property's value as a parking lot, at a time when the parking business at said location may have slumped, is no criterion of its true value. He infers that the two adjoining lots may be much more valuable for other purposes than for a parking business, and, to support that premise, he points to the assessed valuations of other lots in the vicinity of the corners of Fourth and Main Streets and Fifth and Main Streets, which (as already mentioned) range from $480.00 per front foot to $2160.-00 per front foot.

■■ We agree generally with the indicated position of the County Assessor. We do not think the undisputed evidence in this case demonstrates that the trial court has incorrectly applied the rule on which complainant relies proscribing the subject property from being assessed at a "higher

valuation than other real estate of *like grade and quality*", for we do not think that proper determination of its value can correctly be based solely on its value for parking lot purposes, or upon a comparison of its attributes for that particular business, with other lots used in the same business in downtown Tulsa. Any attempt to show that downtown property like that involved here is excessively assessed merely because it has been given an assessed valuation greater than other parking lots outside the most valuable area of downtown Tulsa (as complainant attempted to do with Mr. Turner's evidence) ignores other aspects, or facets, of the property's true value. Accepting as true the undisputed testimony of complainant's witness, Mr. Cagle, as supported by the map introduced as its exhibit "P", to the effect that the most valuable lots in downtown Tulsa are in the blocks bounded by Fourth and Fifth Streets on one side and Main Street on the other, and noting the subject property's location in relation to them, we cannot say the trial court's judgment is clearly against the weight of the evidence as a whole, or that it is contrary to law. In this connection, we notice that all of the lots between Third and Fifth Streets with frontage on Main Street are assessed at much more than $600.00 per front foot, at valuations ranging from $1056.00 to $2160.00 per front foot. The subject property is located on the first street west of these blocks, Boulder Avenue, and directly across said Avenue from lots facing Third Street having an assessed valuation of $600.00 per front foot.

■ Moreover, we think that the manner in which the County Assessor arrived at the subject property's assessed valuation is of little significance, if the figure resulting therefrom is truly representative of said property's fair cash value.

■ On the basis of the above considerations, it is our opinion that the trial judge's conclusion that the subject lots should be assessed at $600.00 per front foot gives them

a value for ad valorem tax purposes no higher than the evidence shows other land of "like grade and quality" have been given (quoting from Mid-Continent Bldg. Co. v. Board of Equalization, 184 Okl. 525, 88 P. 2d 626, 627, cited by complainant). Complainant does not suggest that some, or any, of such assessments are too high, though its counsel do say, with reference to two parking lots having assessed valuations of $420.-00 and $552.00 per front foot, respectively, that their (assertedly) excessive evaluation does not justify an excessive valuation of the subject property.

In the County Assessor's appeal from the judgment, he complains of its compelling reduction of the land's proposed valuation from $608.00 to $600.00 per front foot, after a finding, in said judgment, that the higher valuation " * * * was not equalized with similar property situated in the * * * " same district. His counsel represent that the mentioned finding was based on the fact that certain lots across Boulder Avenue from the subject lots, and facing Third Street, have an assessed valuation of only $600.00 per front foot. They point out that these latter lots are much smaller, and of lesser depth, than the area involved here, and claim this demonstrates they are of lesser value. We do not agree. From our appraisal of the evidence, we are of the opinion that the nearness of the mentioned lots to Main Street is a more significant factor in the enhancement of their value, than their width or depth. We are also of the opinion that the judgment of the trial court "[is] not against the clear weight of the evidence." See Appeal of National Bank of Tulsa, Okl., 312 P.2d 495.

In view of the foregoing, we conclude that the assessor's arguments, like those of the complainant, present insufficient ground for reversal of the trial court's judgment. Said judgment is therefore affirmed.

WILLIAMS, C. J., and WELCH, DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.