In the Matter of the Review of Enrolled House Bill No. 586 and Enrolled Senate Joint Resolution No. 8 of the Twenty-ninth Legislature of Oklahoma.

**William R. DAVIS, Appellant,**

v.

**J. D. McCARTY, Speaker of the House of Representatives of the State of Oklahoma, individually and on behalf of all of the members of the House of Representatives of the State of Oklahoma, Roy C. Boecher, President Pro Tempore of the Senate of the State of Oklahoma, individually and on behalf of all of the members of the Senate of the State of Oklahoma and Henry Bellmon, Governor of the State of Oklahoma, Appellees.**

No. 40496.

Supreme Court of Oklahoma.

Jan. 10, 1964.

Edward M. Box, Oklahoma City, for appellant.

Charles Nesbitt, Atty. Gen., Oklahoma City, for appellees.

JACKSON, Justice.

█ This is an original action filed in this Court by William R. Davis, hereinafter called Petitioner, for review of House Bill No. 586, and Senate Joint Resolution No. 8, which were enacted by the Twenty-ninth Oklahoma Legislature in 1963. Since these enactments provide for legislative apportionments of the House and Senate it is our duty, upon petition filed, to review the apportionments to determine if they are in accord with the Oklahoma Constitution. Art. 5, Sec. 10(j), Oklahoma Constitution, and Enrolled Senate Concurrent Resolution No. 13, of the Twenty-ninth Oklahoma Legislature (1963).

Subsequent to the filing of the foregoing Petition for Review the Honorable Charles Nesbitt, Attorney General of Oklahoma, filed an application for this Court to enter a Provisional or Conditional Order which, in effect, would direct how the 1964 elections for legislative offices should be conducted if the Order of Reapportionment entered on July 17, 1963, by the United States District Court for the Western District of Oklahoma, in Moss v. Burkhart, et al., D.C., 220 F.Supp. 149, should be stayed, reversed, vacated, or held ineffective for any reason. In the Attorney General's motion we are advised that an application for a stay of the Order of Reapportionment entered in Moss v. Burkhart will be made to the Supreme Court of the United States, where that case is now pending on appeal.

█ Since the promulgation of the opinion in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, we are not wholly without power, in our review, to grant some form of appropriate relief. The Baker case established, for the first time, that the courts are authorized to act when apportionment legislation fails to meet the apportionment standards prescribed by a state constitution. However, since Baker v. Carr gives us no guidelines as to what remedies may be applied by the courts, we have concluded that in selecting an "appropriate remedy" we must select the "minimum remedy" which will meet the test of substantial equality prescribed by our State Constitution. This conclusion is consistent with the separation of powers, so fundamental in our governmental system, and is consistent with the Oklahoma Constitution which directs the Legislature to make the apportionments.

Consistent with the view that we should apply the "minimum remedy" and thus preserve the integrity of the separation of powers, we have concluded in our review of H.B. 586 and SJR No. 8 supra, that this may be accomplished without disturbing in any way H.B. 586, except to remove flotorial representation unauthorized by the constitution; and without disturbing in any way SJR No. 8, except to add senatorial representation to meet the test of substantial equality prescribed by our Constitution. In so doing we leave intact all Legislative and Senatorial districts established by the Legislature; we accept their apportionments, and do not involve ourselves in legislative matters.

In considering H.B. No. 586, which apportioned the House of Representatives, we find the population of Oklahoma, according to the last decennial Federal census, was 2,328,284. When this population figure is considered in connection with Art. 5, Sec. 10(a), (b), (d), and (e), Oklahoma Constitution, we find that a ratio of representation in the House of Representatives is 23,282;

one-half a ratio is 11,641; one and three-fourths of a ratio is 40,743; and one-fifth of a ratio is 4,656. With these figures the number of representatives to which any county or county-group is entitled may be determined from the following tables:

Under Art. 5, Sec. 10(d) above:

| Population | | No. of Permanent Representatives |
|---|---|---|
| At least 11,641 | (1/2 ratio) | 1 |
| At least 40,743 | (1 3/4 ratios) | 2 |
| At least 64,025 | (2 3/4 ratios) | 3 |
| At least 157,153 | (6 3/4 ratios) | 7 |

Under Art. 5, Sec. 10 (e), above:

| Population | | No. of Flotorial Representatives |
|---|---|---|
| At least 27,939 | (1 1/5 ratios) | 1 |
| At least 32,594 | (1 2/5 ratios) | 2 |
| At least 37,250 | (1 3/5 ratios) | 3 |

———◆———

■ The flotorial representation formula contained in Sec. 10(e), supra, is not applicable when a county has less than a ratio (23,382), but is applicable "when any county shall have a fraction above the ratio * * * equal to one-fifth of a ratio".

Article 5, Sec. 10(e), supra, provides:

(e) When any county shall have a fraction above the ratio so large that being multiplied by five the result will be equal to one or more ratios, additional representatives shall be apportioned for such ratio among the several sessions of the decennial period. If there are two ratios, representatives shall be allotted to the fourth and third sessions, respectively; if three, the third, second, and first sessions, respectively; if four, to the fourth, third, second, and first sessions, respectively."

By virtue of this constitutional provision, if a county or county-group is entitled to two or more flotorial Representatives during the several sessions of the decennial period, then such flotorial representation must be allotted to the Legislative sessions as prescribed.

Article 5, Sec. 10(d), supra, contains a proviso " * * * That no county shall ever take part in the election of more than seven representatives." Under the terms of H. B. 586, no county is allotted more than seven representatives during any session of the decennial period. In Moss v. Burkhart, supra, the Federal Court concluded that this proviso results in invidious discrimination in Oklahoma and Tulsa counties because of the population factor. However, we are not aware of any decision from the Supreme Court of the United States which requires both Houses of a State Legislature to be based upon numerical equality contrary to the will of the people as expressed in their State Constitution. While it is clearly our duty to uphold both State and Federal Constitutions we doubt that we should be quick to upset our State Constitution until it clearly appears that our State Constitution is repugnant to the Federal Constitution. Accordingly we will assume that our constitutional limit of seven representatives to any individual county, when considered in light of the fact that senatorial representation is based upon numerical equality, does not result in invidious discrimination against the more populous counties.

We do find fault, however, with the apportionment of the House of Representatives as set forth in H. B. 586, supra, for the reason that it assigns flotorial representatives to some counties and county-groups not entitled thereto under the provisions of Article 5, Sec. 10(d) and (e), supra. We find however, that by applying the constitutional formula for determining the number of flotorial representatives that a county or county-group may be entitled, and the constitutional allotment of the flotorial representatives during the several legislative periods, the unauthorized flotorial representation may be eliminated without disturbing the Legislative districts prescribed by H. B. No. 586 for the election of the House of Representatives.

In eliminating the unauthorized flotorial representatives, without disturbing the Legislative districts, we would only be applying a "minimum remedy" in our review of H. B. 586.

Therefore, the apportionment of the House of Representatives, as set forth in H. B. 586, remains unchanged except for the elimination of flotorial representatives unauthorized by the Oklahoma Constitution.

The name of each county and the names of each county-group, together with representation entitlements under H. B. 586, the Oklahoma Constitution, and this Order are listed, for clarity, under columns designated for the second, third, fourth and fifth Legislative Periods, as follows:

| County or County Group | 2nd Period | 3rd Period | 4th Period | 5th Period |
|---|---|---|---|---|
| Alfalfa–Grant | 1 | 1 | 1 | 1 |
| Atoka–Pushmataha | 1 | 1 | 1 | 1 |
| Beaver–Harper | 1 | 1 | 1 | 1 |
| Cimarron–Texas | 1 | 1 | 1 | 1 |
| Coal–Hughes | 1 | 1 | 1 | 1 |
| Cotton–Jefferson | 1 | 1 | 1 | 1 |
| Craig–Nowata | 1 | 1 | 1 | 1 |
| Dewey–Ellis–Roger Mills | 1 | 1 | 1 | 1 |
| Greer–Harmon | 1 | 1 | 1 | 1 |
| Haskell–Latimer | 1 | 1 | 1 | 1 |
| Johnston–Murray | 1 | 1 | 1 | 1 |
| Kingfisher–Major | 1 | 1 | 1 | 1 |
| Love–Marshall | 1 | 1 | 1 | 1 |
| Noble–Pawnee | 1 | 1 | 1 | 1 |
| Adair | 1 | 1 | 1 | 1 |
| Beckham | 1 | 1 | 1 | 1 |
| Bryan | 1 | 1 | 1 | 1 |
| Blaine | 1 | 1 | 1 | 1 |
| Caddo | 2 | 1 | 1 | 1 |
| Canadian | 1 | 1 | 1 | 1 |
| Carter | 2 | 2 | 1 | 1 |
| Cherokee | 1 | 1 | 1 | 1 |
| Choctaw | 1 | 1 | 1 | 1 |
| Cleveland | 2 | 2 | 2 | 2 |
| Comanche | 4 | 4 | 4 | 4 |
| Creek | 2 | 2 | 1 | 1 |
| Custer | 1 | 1 | 1 | 1 |
| Delaware | 1 | 1 | 1 | 1 |
| Garfield | 2 | 2 | 3 | 2 |
| Garvin | 2 | 1 | 1 | 1 |
| Grady | 1 | 2 | 1 | 1 |

| County or County Group | 2nd Period | 3rd Period | 4th Period | 5th Period |
|---|---|---|---|---|
| Jackson | 2 | 1 | 1 | 1 |
| Kay | 2 | 2 | 2 | 2 |
| Kiowa | 1 | 1 | 1 | 1 |
| LeFlore | 2 | 1 | 1 | 1 |
| Lincoln | 1 | 1 | 1 | 1 |
| Logan | 1 | 1 | 1 | 1 |
| McClain | 1 | 1 | 1 | 1 |
| McCurtain | 1 | 1 | 1 | 1 |
| McIntosh | 1 | 1 | 1 | 1 |
| Mayes | 1 | 1 | 1 | 1 |
| Muskogee | 3 | 3 | 2 | 2 |
| Okfuskee | 1 | 1 | 1 | 1 |
| Oklahoma | 7 | 7 | 7 | 7 |
| Okmulgee | 1 | 2 | 2 | 1 |
| Osage | 1 | 1 | 2 | 1 |
| Ottawa | 1 | 2 | 1 | 1 |
| Payne | 2 | 2 | 2 | 2 |
| Pittsburg | 1 | 2 | 2 | 1 |
| Pontotoc | 2 | 1 | 1 | 1 |
| Pottawatomie | 2 | 2 | 2 | 2 |
| Rogers | 1 | 1 | 1 | 1 |
| Seminole | 1 | 2 | 1 | 1 |
| Sequoyah | 1 | 1 | 1 | 1 |
| Stephens | 2 | 2 | 1 | 1 |
| Tillman | 1 | 1 | 1 | 1 |
| Tulsa | 7 | 7 | 7 | 7 |
| Wagoner | 1 | 1 | 1 | 1 |
| Washington | 2 | 2 | 2 | 2 |
| Washita | 1 | 1 | 1 | 1 |
| Woods | 1 | 1 | 1 | 1 |
| Woodward | 1 | 1 | 1 | 1 |
| | 93 | 93 | 88 | 84 |

In considering the Legislative apportionment of the Senate we note the following significant provisions of our Constitution. Art. 5, Sec. 9, provides that the Senate, *except as otherwise provided,* shall consist of not more than forty-four members. Section 9 provides senatorial terms shall be four years.

Sec. 9(a) provides that at the time each senatorial apportionment is made, after 1910, the State shall be divided into forty-four districts. Each district is directed to elect one senator. However, this section also provides that in the event any county is entitled to three or more senators at the time of any apportionment the additional senators (above two) for such county shall be allowed although it increases the Senate to a number larger than forty-four.

Sec. 9(a), supra, provides that senatorial districts shall be numbered from One to Forty-four, inclusive. However, it must be noticed that Sec. 9(b), Okla.Const., authorizes a county which is entitled to *two or more* Senators to be divided into two or more senatorial districts.

Substantial arguments have been heard to the effect that the State should never be

divided into more than forty-four districts even though the Constitution clearly authorizes more than forty-four senators when any county is entitled to more than two. Sec. 9(b) makes specific provisions for dividing a county into *two or more* senatorial districts wholly within a county. Thus it would seem that the State may be divided into as many senatorial districts as there are senator entitlements. See in this connection Jones v. Freeman (1943), 193 Okl. 554, 146 P.2d 564, and Latting v. Cordell (1946), 197 Okl. 369, 172 P.2d 397.

From population figures obtainable from Jones v. Freeman, supra, it is now apparent that a greater population figure was required to authorize Senatorial representation in Oklahoma and Tulsa counties than was required in other senatorial districts in the state. It appears that we took the whole population of the state (1940 Federal Decennial Census) which was 2,336,434 and divided that figure by 44 to arrive at the population of a district (53,101). We then took that figure (53,101) and divided it into the populations of Oklahoma (244,159) and Tulsa (193,363) counties and concluded that these counties were entitled to 4 and 3 senators, respectively. We then subtracted the population of Oklahoma and Tulsa counties (437,522) from the total population of the state (2,336,434, supra) and determined that the state, excluding Oklahoma and Tulsa counties, had a population of 1,898,912. We then divided that population (1,898,912) by the number of senatorial districts authorized for the rest of the state (40) and determined that the average population in senatorial districts outside of Oklahoma and Tulsa counties would be 47,473. Thus the population of senatorial districts in Oklahoma and Tulsa counties was 53,101, and in the rest of the state was only 47,473.

In Jones v. Freeman, in order to equalize senatorial representation on a population basis, we should have first subtracted the total population of Oklahoma and Tulsa counties (437,522) from the total population of the state (2,336,434) and then divided the result (1,898,912—population outside Oklahoma and Tulsa counties) by 40 in order to determine the population of senatorial districts. The result would have been that each senatorial district (or senator entitlement) in all parts of the state, including Oklahoma and Tulsa counties, would have a population of 47,473. If this had been done the population of Oklahoma county (244,-159), when divided by 47,473, would have given it 5 senators; Tulsa county's population, .193,363, when divided by 47,474, would have given it 4 senators.

In Latting v. Cordell, supra, the parties agreed that Oklahoma and Tulsa counties were entitled to 4 and 3 senators, respectively, and there was no occasion for us to question those figures.

According to the Federal Census of 1960 the population of the State of Oklahoma is 2,328,284; after deducting the population of Oklahoma county (439,506) and Tulsa county (346,038), a total of 785,544, from the population of Oklahoma (2,328,284) the rest of the state will have a population of 1,542,740. When this number is divided by 40, each senatorial district, or senator entitlement, will contain an average population of 38,568. By applying that population factor to Oklahoma and Tulsa counties we see that they are entitled to 11 and 8 senators respectively. Comanche county with a population of 90,803 is entitled to two senators, and no other county or county-group is entitled to more than one.

In the foregoing discussion we have confined ourselves to what we believe to be a correct procedure for a senatorial apportionment under the Oklahoma Constitution. If this procedure had been followed Comanche, Oklahoma, and Tulsa counties would have two senatorial districts each (a total of six) which, under the terms of Sec. 9(a), would have been deducted from the forty-four senatorial districts authorized for the state. The rest of the state, outside of Comanche, Oklahoma, and Tulsa counties would have been entitled to thirty-eight senatorial districts. However, under SJR No. 8 the Legislature established thir-

ty-nine senatorial districts outside of Comanche, Oklahoma, and Tulsa counties, instead of the authorized thirty-eight senatorial districts. Thus when we allot two senatorial districts to Comanche county, as the Constitution requires, we have forty-one senatorial districts outside of Oklahoma and Tulsa counties. In utilizing the senatorial apportionment set forth in SJR No. 8, and in equalizing senatorial representation, we must take the population outside of Oklahoma and Tulsa counties, 1,542,740, and divide that figure by 41 instead of 40. When this is accomplished Tulsa county with a population of 346,038 is entitled to 9 senators, Oklahoma county 11, and Comanche county 2.

The removal of this unauthorized senatorial district will require an apportionment of a substantial number of senatorial districts which should be accomplished by legislative action.

SJR No. 8, supra, authorizes only 4 senators for Oklahoma county, 3 for Tulsa county, and one for Comanche county.

■ In the introductory paragraphs of SJR No. 8, it is pointed out that the Oklahoma Constitution provides that senatorial districts shall be based upon population as ascertained by the next preceding Federal Census, "or in such manner as the Legislature may direct." From this the Legislature concluded that it was authorized to "consider other factors in addition to the number of persons within a district." Among the other factors apparently considered in reapportioning the Senate was that migratory, transient, and temporary residents should not be included in a census for legislative reapportionment; and that the number of registered voters and the number of people actually voting in the last election should be taken into consideration in determining permanent population. From these conclusions and pronouncements we must conclude that these factors were taken into consideration in the reapportionment of the Senate. While it may be that each of these "other factors" would have been worthy of consideration by the framers

of our Constitution we have found nothing in our Constitution which directly, or by implication, authorizes such procedure. In any event no statute has been enacted authorizing or directing the taking of a state census or enumeration to be used in lieu of the regular decennial Federal Census for senatorial reapportionment purposes.

If the Supreme Court of the United States should stay the effectiveness of the apportionment provided in Moss v. Burkhart, supra, then unless we are authorized to act, the State Election Board would be required to conduct the election in 1964 for senatorial seats under SJR No. 8, supra, notwithstanding the fact that it denies the equality of senatorial representation required by the Oklahoma Constitution for the larger counties.

It is therefore the order of this court that if the Supreme Court of the United States should stay the effectiveness of the Order of Reapportionment heretofore entered in Moss v. Burkhart on July 17, 1963, then the election of Senators in 1964 and during the remainder of the current decennial period (unless modified by legislation or court order) shall be conducted in all respects under the provisions of SJR No. 8.

However, the additional senatorial entitlements for Comanche, Oklahoma, and Tulsa counties, not provided for in SJR No. 8, and the terms of office for such senators, must be provided for in this order.

The additional senatorial office for Comanche county, authorized by the Oklahoma Constitution, and established by this order, shall be identified as District No. 10A. The district area shall include the entire county and such district shall elect a Senator in 1964 who shall hold office for a term of two years.

The additional offices for Oklahoma county, authorized by the Oklahoma Constitution, and established by this order, shall be identified as Districts Nos. 17A, 18A, 19A, and 20A. The district area of each district herein established shall include the area as set forth in its numerical counterpart in

SJR No. 8; that is, 17A, 18A, 19A, and 20A, shall include the areas defined in SJR No. 8 for Districts Numbered 17, 18, 19, and 20, respectively. Each of said districts herein established shall elect a Senator in 1964. The Senators elected in Districts No. 17A and 19A shall hold office for a term of two years. The Senators elected in Districts No. 18A and 20A shall hold office for a term of four years.

Oklahoma county shall, as authorized by the Oklahoma Constitution and this order, elect three senators at large in said county in 1964. The offices will be designated as "Senator at Large", "Office No. 1", "Office No. 2", and "Office No. 3." Senators elected to "Office No. 1" and "Office No. 3." shall hold office for a term of two years. The Senator elected at large to "Office No. 2" shall hold office for a term of four years.

The additional offices for Tulsa county, authorized by the Oklahoma Constitution, and established by this order, shall be identified as Districts Nos. 33A, 34A, 35A, 33B, 34B, and 35B. The district area of each district herein established shall include the area as set forth in its numerical counterpart in SJR No. 8; that is 33A, 34A, and 35A, shall include the areas defined in SJR No. 8 for Districts Numbered 33, 34, and 35, respectively; and 33B, 34B, and 35B, shall include the areas defined in SJR No. 8 for Districts Numbered 33, 34, and 35, respectively. Each of said districts herein established shall elect a Senator in 1964. The Senators elected in Districts Numbered 33A, 34A, and 35A, shall hold office for a term of four years, and the Senators elected in Districts Numbered 33B, 34B, and 35B shall hold office for a term of two years.

The term of office of all Senators elected in 1964 under the provisions of this order shall commence on the fifteenth day following the general election in 1964.

Senators elected after 1964 in the districts established by this order shall be elected for four year terms.

Prior to the adoption of SJR No. 8, the Federal Court in Moss v. Burkhart had declared all legislative apportionments then existing prospectively null and void. In Sec. 11 of SJR No. 8 (14 O.S.Supp.1963, § 78.11) the Legislature provided that if any clause, provision, part or portion of the Act is finally adjudged invalid or ineffective for any reason by final judgment of a court of competent jurisdiction then the entire Act shall be invalidated and become null and void.

If the non-severability clause is effective to destroy SJR No. 8 in view of our treatment of that Act, then there exists no legislative apportionment of the Senate. Why the Legislature inserted this non-severability clause is not clear. More important is the legal status of SJR No. 8.

■■ While we prefer to be cast in the role of selecting "the minimum remedy" we may not fail to utilize an "appropriate remedy" sufficient to preserve a co-ordinate branch of state government, and sufficient to grant affirmative relief to those counties entitled to such relief under our Constitution. This Court may never be authorized to act, or fail to act, so as to put an end to the existence of any co-ordinate branch of state government. See Brown v. State Election Board, Okl., 369 P.2d 140, and cases referred to therein. A co-ordinate branch of the government may never be permitted to destroy itself. Therefore, the non-severability clause may not be utilized to prevent judicial review by this Court as directed by Art. 5, Sec. 10(j) Oklahoma Constitution.

It is therefore the order of this Court that the directives mentioned in this opinion shall become effective if, and only if, the Order of Reapportionment heretofore entered in Moss v. Burkhart on July 17, 1963, should be reversed, vacated, or held ineffective for any reason.

Pursuant to Enrolled Senate Concurrent Resolution No. 13, supra, the Chief Justice of this Court is directed to mail certified copies of this opinion and conditional order to the Honorable Roy C. Boecher, President Pro Tempore of the Senate, and to the Honorable J. D. McCarty, Speaker of the House of Representatives.

HALLEY, Vice Chief Justice (specially concurring).

It is my opinion that Art. 5, § 10(d) of the Constitution of the State of Oklahoma, which provides that no county shall ever take part in the election of more than seven representatives is unconstitutional under the provisions of the Constitution of the United States which is the supreme law of the land. Therefore, so far as the apportionment Act retains such limitation in the House of Representatives for Oklahoma and Tulsa Counties it is unconstitutional.

I realize that the declaring of a portion of our State Constitution to be unconstitutional under the Federal Constitution should not be undertaken lightly. The Supreme Court of Washington said it this way in Romine v. State, 7 Wash. 215, 34 P. 924:

"But there is also a question of propriety involved. The courts of the states are as much bound to uphold the supremacy of the constitution of the United States as are the federal courts, or as they are to sustain the constitution and laws of their several states. This obligation may perhaps even extend to declaring unconstitutional a provision in the state constitution under which the court exercises jurisdiction. But the conflict between the state and the federal constitution must certainly be a very clear one to call for so solemn a decision; * * *."

When considering this point the Supreme Court of Colorado in People v. Western Union Telegraph Company, 70 Colo. 90, 198 P. 146, 15 A.L.R. 326, said:

" * * * The answer is that any section of the state Constitution which is contrary to the federal Constitution is, for that reason and to that extent, null and void. It is no part of the state Constitution, and no legerdemain of logic can cover it with the sanctity of a judge's oath."

But this is not the first time this Court has been called upon to make "so solemn a decision" and we have previously found such a "very clear" conflict between the State and Federal Constitutions. In the case of Appeal of National Bank of Tulsa, Okl., 312 P.2d 495, we held in the first paragraph of the syllabus:

"In assessing property for ad valorem tax purposes, uniformity and equality required by the 14th Amendment to *the Federal Constitution takes. precedence over* the requirement of Art. X, sec. 8 of *the Oklahoma Constitution* that property be assessed 'at its fair cash value' where compliance with both provisions is impossible." (emphasis added)

We have used this identical language in other cases involving this subject matter. See fourth paragraph of syllabus in Appeal of National Bank of Commerce of Tulsa, Okl., 316 P.2d 175; third paragraph of syllabus in Appeal of Thompson Building Company, Okl., 316 P.2d 179; fourth paragraph of syllabus in Appeal of Southwestern Art Ass'n, Okl., 316 P.2d 609; third paragraph of syllabus in In Re Assessment for the Year 1953, etc., Okl., 317 P.2d 242; third paragraph of syllabus in Appeal of Boy Scouts of America, Okl., 317 P.2d 262; first paragraph of syllabus in Appeal of Stanolind Building Corporation, Okl., 317 P.2d 735.

Thus it is seen that this Court is no stranger to the proposition that the Federal Constitution takes precedence over the State Constitution where compliance with the provisions of both is impossible.

It is impossible in the instant case to comply with the provisions of our State Constitution which limits Oklahoma County and Tulsa County to no more than seven representatives in the House of Representatives, and at the same time follow the provisions of the Federal Constitution which have been construed to prohibit invidious discrimination. Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663.

Since we have given Oklahoma, Tulsa and Comanche Counties additional Senators because of invidious discrimination, I think we should give Oklahoma and Tulsa Coun-

ties that representation in the House of Representatives to which their population entitles them under the basis fixed for all other counties and the limit of seven should be disregarded.

In my opinion the reapportionment for the House of Representatives should provide for 19 representatives from Oklahoma County and 15 from Tulsa County.