(No. 31345.—          )

W. Dow HARVEY *et al.*, Appellees, *vs.* HAROLD SULLIVAN, Appellant.

*Opinion filed September 21, 1950.*

ORR, LEWIS & ORR, of Chicago, and HARRIS & HARRIS, of Macomb, (WARREN H. ORR, and WALLACE W. ORR, both of Chicago, of counsel,) for appellant.

GUMBART, GRIGSBY & GUMBART, of Macomb, for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

On April 5, 1949, an election was held for the office of mayor of the city of Macomb, in McDonough County. The result of the canvass of the votes was that Harold Sullivan, the nominee of the Democratic party, received 1874 votes, and Anton J. Johnson, the Republican candidate, 1839 votes. W. Dow Harvey and five others, qualified electors of the city, filed a petition in the circuit court of McDonough County to contest the election. Sullivan and Johnson answered the petition, and an extended hearing followed. The court found that Johnson received more votes than Sullivan and the former was declared legally elected to the office of mayor of Macomb. Sullivan prosecutes this appeal.

The appellant, Sullivan, makes the contention, among others, that 669 ballots bearing the initials "L.N." on the back of each ballot should have been counted, 403 for himself and 266 for Johnson. Disposition of this contention was deemed decisive of the election contest in the circuit court and, in our opinion, is controlling here. Other issues presented and argued by the respective parties do not require consideration.

Section 17-9 of the Election Code (Ill. Rev. Stat. 1949, chap. 46, par. 17-9,) ordains: "One of the judges shall give the voter one, and only one of each ballot to be voted at the election, on the back of which ballots such judge shall indorse his initials in such manner that they may be seen when each such ballot is properly folded, and the voter's name shall be immediately checked on the register

list." Section 17-16 (Ill. Rev. Stat. 1949, chap. 46, par. 17-16,) declares: "No ballot without the official endorsement shall be deposited in the ballot box, and none but ballots provided in accordance with the provisions of this act shall be counted." Section 3 of article 9 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1949, chap. 24, par. 9-3,) provides that "The corporate authorities shall (1) designate the place or places in which municipal elections will be held, (2) appoint the judges and clerks thereof." Conformably to the authority granted, the city council of Macomb, on January 17, 1949, passed an ordinance captioned "1949 Election Ordinance," appointing Jessie Walters, Adda Jackson, and Laura Baker, judges, and Lois Eastin, Marie Riggs and Leona Nell, clerks, for the election on April 5, 1949, for the second ward or precinct of the city of Macomb.

Section 2 of article 9 of the Revised Cities and Villages Act (Ill. Rev. Stat. 1949, chap. 24, par. 9-2,) declares, "The judges of election shall appoint clerks, when necessary to fill vacancies, and the judges and clerks shall take the same oath and have the same powers and authority as the judges and clerks of general state elections." Section 7 of article 13 of the Election Code (Ill. Rev. Stat. 1949, chap. 46, par. 13-7,) provides, "If, at the time of the opening of any election, any person appointed or constituted a judge or clerk of election shall not be present, or will not act or take the oath to act in such capacity the judge or judges present may appoint some other qualified elector having the same qualifications and who is affiliated with the same political party, as the one refusing to take the oath or refusing to act or serve in his place." Section 8 of article 13 (Ill. Rev. Stat. 1949, chap. 46, par. 13-8,) provides, further, "Previous to any vote being taken, the judges and clerks of the election shall severally subscribe and take an oath or affirmation, in the following form,

* * *." This section contains the prescribed form of oath.

The pollbooks disclose that Leona Nell, who had been appointed a clerk of the election, took the prescribed oath as a clerk. Her oath is contained in each of the three pollbooks of ward or precinct 2. The evidence discloses that Leona Nell acted throughout the day as a judge, and, following the canvass of the votes, certified the results as one of the three judges of election. In short, Leona Nell was regularly appointed by the city council of Macomb as a clerk of the municipal election to be held on April 5, 1949. She subscribed to the oath of a clerk of the election in the three pollbooks of ward or precinct 2 of the city and certified to the results of the election in each of the three wards or precincts as a judge of the election.

The precise question presented for decision is whether 669 ballots bearing the initials "L.N.," all admittedly in the handwriting of Leona Nell, should be counted as valid ballots or, instead, rejected as ballots initialed contrary to the provisions of the applicable statutes. This question is not new. In *Laird* v. *Williams*, 281 Ill. 233, this court held that sections 22 and 26 of the Australian Ballot Law requiring that a judge of election must endorse his own initials upon the ballots which he hands out to the voters to be voted are clearly mandatory. The court said, "It is hardly possible for language to be used in the statute that would express the intention and direction of the legislature in plainer and more positive terms than does the language of these two sections with reference to the endorsing of initials on the backs of the ballots by the election judges and with reference to the depositing and counting of the same." It was held that ballots upon which a judge of election indorses the initials of another judge cannot be legally counted. The absence of fraud or intended fraud upon the part of an election official improperly indorsing a

ballot with his initials is immaterial. We recur to this observation in *Laird* v. *Williams*, "We think it would be a very dangerous rule to establish that the election judges may disregard the plain provisions of this statute, and thereby defeat the intention of the law to prevent actual frauds from being committed in elections and to disarm the constituted authorities of the efficient means provided by the statute for detecting such frauds. Such salutary laws should not be repealed, in effect, by the action of election judges simply because their mistakes are innocent or because an honest voter may lose his vote by holding such mistakes fatal. It is more preferable that a voter should lose his vote by the innocent action of the judges and by his own neglect to see to it that he votes a ballot properly endorsed by a judge, than to open the doors to wholesale fraud and corruption. Every voter is presumed to know the law, and by proper care on his part he can know, and should know, that the ballot delivered to him is properly endorsed by one of the election judges with his own initials."

The bench and the bar of the State, and election officials generally, construed the statutory provisions with respect to the initialing of the ballots by a judge of election with his own initials as mandatory until our decisions in *Waters* v. *Heaton*, 364 Ill. 150, and *Neff* v. *George*, 364 Ill. 3c6. These two decisions erroneously held that the statutory provisions construed in *Laird* v. *Williams* are directory in nature and not mandatory. In *Waters* v. *Heaton*, the challenged ballots were initiatled by one judge with the initials of another, with the latter's consent, and without any suggestion of fraud or improper motive or act. In *Neff* v. *George*, it was again held that a ballot is not invalidated because it is indorsed by one judge with the initials of another judge. In *Boland* v. *City of La Salle*, 370 Ill. 387, the rule announced in *Waters* v. *Heaton* and followed in *Neff* v. *George* was carried to its logical extreme when this

court held that, in the absence of fraud, a ballot is not invalidated because initialed by a clerk of the election.

In *Tuthill* v. *Rendelman,* 387 Ill. 321, we recognized the errors made in our decisions in *Neff* v. *George, Waters* v. *Heaton* and *Boland* v. *City of La Salle* by stating that they "are in harmony with neither the earlier nor subsequent decisions of this court construing the language of section 22 of the act, requiring that one of the judges 'shall endorse his initials' on the ballot." We adhere to and reaffirm our decision announced in *Tuthill* v. *Rendelman.* The law is clear, and no good reason suggests itself for departing from either its letter or spirit.

To circumvent the unambiguous language of the statute and the decision in *Tuthill* v. *Rendelman,* 387 Ill. 321, which correctly follows *Laird* v. *Williams,* 281 Ill. 233, appellant earnestly contends that neither the statute nor the clear-cut decisions of this court in these two cases apply because, as he asserts, Leona Nell was a *de facto* judge. It appears that Jessie Walters, one of the judges appointed by the city ordinance passed January 7, 1949, was not present at the election on April 5, 1949. Mrs. Walters was ill prior to the election and, according to Leona Nell, an alderman requested her to serve on the election board as a judge for the reason that Mrs. Walters was ill and could not serve. Mrs. Walters was not present at any time prior to the opening of the polls nor was Erma Stoockey present on April 5, 1949, at the polling place prior to the opening of the polls. Leona Nell testified that she signed the pollbook within a few minutes of the opening of the polls and that the oath was administered to her by Adda F. Jackson, a judge of the election. Adda F. Jackson testified to the same effect. Laura Baker testified that she telephoned Erma Stoockey, requesting her to assist at the polling place and that the latter arrived about seven o'clock, pursuant to the telephone call. Erma Stoockey testified that she acted as a clerk of the election. She took

the oath as a judge of election but acted as a clerk throughout the day and signed the pollbooks at the end of the day as a clerk of election.

The situation which obtained was that the three persons appointed clerks of the election presented themselves on the morning of April 5, 1949, for duty as clerks and took the prescribed oath as clerks. Two of the three judges appointed to serve at the municipal election appeared and took the oath as judges. There was but one vacancy to fill, namely, that of a judge of the election. Erma Stoockey appeared, as narrated, and took the oath of a judge. The vacancy was properly filled. Erma Stoockey took the oath prescribed by statute, accepted the office of judge, and became a *de jure* judge. In like manner, Leona Nell, duly appointed a clerk of election by the city council, accepted the office of clerk, took the oath as clerk, and became a *de jure* clerk. To hold that a *de jure* judge and a *de jure* clerk, under the circumstances described, may switch their positions on an election board so that a *de jure* judge becomes a *de facto* clerk and a *de jure* clerk becomes a *de facto* judge would compel us to ignore the mandate of the election laws. The decision sought would be an opening wedge which would ultimately destroy the statute and nullify its objective of honest elections by opening the way to gross and glaring fraud.

A person is a *de facto* officer, it has been said, where the duties of the office are exercised, "first, without a known appointment or election but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was

not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public; fourth, under color of an election or an appointment by or pursuant to a public, unconstitutional law before the same is adjudged to be such." (*State* v. *Carroll*, 38 Conn. 449.) We adopted the foregoing quotation in *People* v. *Brautigan*, 310 Ill. 472, where this court observed further, "An officer *de jure* is one who is in all respects legally appointed and qualified to exercise the office. If the duties of an office or public body are performed by the officer or body *de jure*, another officer or body, though claiming under color of title, cannot become an officer or body *de facto* by undertaking to perform official acts or duties, and can not be a *de facto* officer or body while a *de jure* officer or body is exercising the functions of the office or body."

In the present case, Leona Nell did not satisfy the first requirement of the quoted definition that she be "without a known appointment" and that she hold under "reputation and acquiescence" over a long period. Nor did she act under color of a known and valid appointment as judge of election for the adequate reason that she was legally appointed a clerk of election, took the oath as clerk, and was a *de jure* clerk on April 5, 1950. Nor was there any failure to conform to a precedent requirement or condition, such as taking an oath. In the third place, she was not ineligible to hold the office of judge had she been regularly appointed and taken the prescribed statutory oath and, fourth, she was not acting under color of an appointment by or under an unconstitutional law. In short, Leona Nell was not a *de facto* judge.

The judgment of the circuit court of McDonough County is affirmed.

*Judgment affirmed.*