156 So.2d 48

Francis LE DOUX et al.

v.

The PARISH DEMOCRATIC EXECUTIVE COMMITTEE OF ST. LANDRY PARISH.

No. 46935.

Aug. 26, 1963.

Opinion Aug. 29, 1963.

· Jack P. F. Gremillion, Atty. Gen., Harry J. Kron, Jr., Asst. Atty. Gen., Thomas W. McFerrin, Sp. Counsel, for relator.

Garland, DeJean & Ledet, Opelousas, for respondents.

Woolen J. Falgout, Asst. Dist. Atty., Francis Dugas, Sp. Counsel, J. D. DeBlieux, Ralph Brewer, Kenneth C. Scullin, Baton Rouge, for intervenors.

FOURNET, Chief Justice.

Because of the far-reaching effect of the judgment of the district court in this case, involving as it does the constitutionality of Act No. 2 of the First Extraordinary Session of 1963 , carrying out the mandate of Section 2 of Article III of the Constitution of 1921, reapportioning the membership of the Louisiana House of Representatives, on the very eve of the primary elections that must be conducted under provisions of law also enacted pursuant to constitutional mandate, it is necessary, under the exigencies of the case, and in order that our decree in this matter may become effective immediately so that there will be no disruption of the orderly functioning of the necessary machinery permitting qualification and selection of candidates seeking to offer themselves for these offices at the General Election to be held in March of 1964, to this day hand down our decree in this case, our reasons therefor to follow in due course.

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the judgment of Division "B" of the Twenty-seventh Judicial District Court in the case of Francis LeDoux, et al. v. The Parish Democratic Executive Committee of St. Landry Parish, No. 47,265 on the docket of that court, in so far as it declares Act No. 2 of the First Extraordinary Session of the Louisiana Legislature for 1963 to be unconstitutional, is reversed, and the validity thereof is hereby specifically maintained. And, accordingly, in so far as the judgment commands, under the writ of mandamus, the Democratic Executive Committee of St.

Landry Parish to call and conduct a primary election to be held on December 7, 1963, for the nomination of three candidates for members of the Louisiana House of Representatives from St. Landry Parish, it is annulled and set aside and the suit of the plaintiffs is hereby dismissed at their cost.

## Opinion

This court herewith assigns the following reasons in support of its decree handed down August 26, 1963, resolving the issues presented for our decision in this case:

Plaintiffs, citizens and taxpayers of St. Landry Parish,[1] alleging they were aggrieved by the passage of Act No. 2 of the First Extraordinary Session of the Louisiana Legislature, under which the legislature by mere act purportedly reapportioned the membership of the House of Representatives to reflect population changes throughout the state, as a result of which St. Landry's representatives were reduced from the three specifically allocated to that parish in Section 5 of Article III of the Constitution of 1921, to two, instituted this mandamus proceeding on August 13, 1963, to compel

the Parish Democratic Executive Committee of St. Landry Parish "to call and conduct a primary election to be held on December 7, 1963, for the nomination of *three (3)* candidates for members of the House of Representatives from St. Landry Parish to be voted on in the general state election to be held in March, 1964." Subsequently, on the day the hearing was had in the matter (August 19, 1963), the plaintiffs in open court, were permitted to amend the original petition and prayer to the end that Act No. 2 might be declared to be unconstitutional.

Although no defense or appearance was made by the committee,[2] citizens and taxpayers of East Baton Rouge Parish intervened for the purpose of uniting with the defendant to resist the demands of the plaintiffs, and they filed an answer in which they maintained Act No. 2 was constitutional.

After a hearing on August 19, 1963, the trial judge declared Act No. 2 of the 1963 extra session to be unconstitutional and issued a writ of mandamus directing the committee to proceed with the calling of a primary election to be held on December 7,

---

1. The plaintiffs are Francis Ledoux, Jack H. Wilson, Jr., Francis Doucet, Easton Hebert, Austin J. Fontenot, Steven Dupuis, Alton Durand, Sidney Sylvester, Gantt Nicholson, Jr., Frank Diesi, George U. Joubert, J. M. Lafleur, Harry B. Garland, D. J. Doucet, Percy Ledoux, Johnnie A. Haas, and Evrard Brown.

2. When the trial judge noted the defendant committee was not represented at the hearing, he ordered that a copy of the minutes of that committee meeting held August 17, 1963, be filed in evidence, and these reflect the committee, being in full accord with the allegations of the petition, by proper resolution declined to contest the suit.

1963, for the nomination of three members of the House of Representatives from St. Landry parish under the provisions of Section 5 of Article III of the Constitution of 1921, as prayed for by plaintiffs.

Thereupon the State of Louisiana, availing itself of the provisions of Section 56 of Article VII of the Constitution of 1921, and Articles 1091 and 2086 of the Code of Civil Procedure, intervened in the matter, and, having been refused a suspensive appeal from this judgment, sought and obtained from this court on August 21, 1963, a writ of certiorari with an order staying all further proceedings in the matter.[3]

On the day this case was specially set for argument, August 26, 1963, the attorneys appearing on behalf of the intervenors from East Baton Rouge Parish filed peremptory exceptions seeking thereby the dismissal of the action of plaintiffs on the grounds (1) the petition failed to state a cause of action since (a) relief was sought under R.S. 18:364, relative to election contests, which is inapplicable here, and (b) the relief sought is predicated on the sec-

ond and third paragraphs of Section 5 of Article III of the Constitution of 1921, as amended, which have been declared to be unconstitutional in a proceeding in the federal court; and (2) plaintiffs failed to join as indispensable parties defendant the Attorney General, Secretary of State, the Board of Supervisors of Elections of St. Landry Parish, and the republican and democratic executive committees of various parishes in Louisiana, as well as the Boards of Supervisors of Elections in these same parishes.[4]

While we recognize that there is merit to some of these exceptions, if not all, as well as to the contention urged in pleadings and argument by the intervenors to the effect that the mandamus was improvidently granted in this case,[5] due to the far-reaching effect of the decision here under consideration, affecting as it does the reapportionment of the membership of the House of Representatives throughout the entire state on the very eve of a primary election, as mentioned when our decree in this case was handed down as soon as possible after

---

3. Despite the order staying all further proceedings in the matter in the trial court, on August 22, 1963, the trial judge authorized the citizens and taxpayers of East Baton Rouge Parish, who had intervened in the matter, to appeal suspensively and/or, in the alternative, devolutively, and, further, permitted certain citizens and taxpayers of Acadia Parish to intervene by joining the plaintiffs in the matter under an order dated August 23, 1963.

4. Lafourche, Acadia, East Baton Rouge, Orleans, Caddo, Jefferson, Avoyelles, Calcasieu, Terrebonne, Natchitoches, and St. Mary parishes.

5. In connection with the contention touching on the unwarranted and illegal resort to the mandamus process in this case, see, State ex rel. Le Blanc v. Democratic State Central Committee, 229 La. 556, 572, 86 So.2d 192, 198.

the case was argued, in order to settle once and for all this matter so vital to the best interest and welfare of the state and its citizenry, and to permit the timely and orderly election processes of the state to continue uninterrupted by further actions that might cause still greater confusion and delay, we prefer to rest our decision on the merits of the case, and, therefore, pretermit any conclusion with respect to these exceptions and the propriety of the mandamus process in securing the judgment that is before us for review.

As the basis for their attack on the constitutionality of Act No. 2 of the extra 1963 session, plaintiffs allege (1) this was an effort by the legislature to amend and re-enact paragraphs 2 and 3 of Section 5 of Article III of the Constitution by means of a legislative act alone, and without its submission to the electorate for ratification, as required for any valid constitution amendment adoption; and that (2) through this means the legislature reapportioned the membership of the House of Representatives without, at the same time, dividing the state into new senatorial districts, as required by Section 3 of Article III of the Constitution of 1921; and, finally, (3), that inasmuch as the legislature of 1960, following the taking of the census, reapportioned the House of Representatives by its Act No. 610, which was ratified by the people at an election held November 8, 1960, any attempt to again reapportion the membership of this body until after the next official United States census is taken in 1970 is specifically forbidden by Sections 2 and 6 of Article III of the Constitution of 1921.

The people of this state, through their elected delegates, in drafting the Constitution of 1921, provided in Article III, under the heading "Legislative Department," that Representation in the House of Representatives shall be equal and uniform, and shall be based upon population. Each parish and each ward of the city of New Orleans shall have at least one representative. At its first regular session after the United States census of 1930, and after each census thereafter, the Legislature shall, and it is hereby directed to, apportion the representation among the several parishes and representative districts on the basis of total population shown by such census. A representative number shall be fixed, and each parish and representative district shall have as many representatives as such representative number is contained in the total number of the inhabitants of such parish or representative district, and one additional representative for every fraction exceeding one-half of the representative number. The number of representatives shall not be more than one hundred and one." Section 2.

It was further provided that "The House of Representatives of the Legislature shall be composed of one hundred members, unless increased as herein provided.

"Wards 3, 7 and 11 of the Parish of Orleans shall each have two representatives, and the remaining wards of said parish shall each have one representative.

"The parish of Caddo shall have four representatives; the parishes of Rapides and St. Landry shall each have three representatives; the parishes of Acadia, Avoyelles, Calcasieu, East Baton Rouge, Lafayette, Lafourche, Natchitoches, Ouachita, St. Mary and Tangipahoa shall each have two representatives; and each of the remaining parishes of the State shall have one representative." [6]

Despite the clear mandate contained in Section 2 of this article, directing the reapportionment of the house membership after the 1930 census, and after each census thereafter, such reapportionment to be made at the first regular session of the legislature after the taking of such census, the Louisiana legislature made no serious effort to comply therewith until certain citizens and taxpayers of East Baton Rouge Parish, who are the same parties intervening in the instant matter, and in reliance on the decision in the case of Baker v.

Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663—wherein the United States Supreme Court for the first time in the history of this country invaded political areas of the individual states theretofore conceded to be within the exclusive province of the citizens thereof by holding that citizens of a state could, in the federal courts, challenge a state's legislative reapportionment act and, if such were found to effect such a gross disproportion of representation to voting population as to place the parties at interest in a position of constitutionally unjustifiable inequality under the provisions of the Fourteenth Amendment to the Constitution of the United States, secure relief prohibiting the conducting of any further elections under that act—instituted in the federal court for the Eastern District of Louisiana, on March 15, 1963, a suit seeking a judgment (1) declaring Section 5 of Article III of the Constitution of 1921, as amended in 1960, as well as its enabling act (R.S. 24:35) to effect a malapportionment of representation in the legislature of Louisiana amounting to "invidious discrimination," and, as such,

---

6. The House membership under Paragraph No. 1 was increased to 101 by Act No. 505 of 1954, the additional member being allotted to Jefferson Parish (R.S. 24:35), and a constitutional amendment requiring that the representatives from Calcasieu parish be selected from different wards was later repealed. Act No. 362 of 1942, approved November 3, 1942, and Act No. 311 of 1944, ratified November 7, 1944. By Act No. 610 of 1960,

ratified November 8, 1960, this section of Article III was amended to increase the House membership to 105, two of the four new members being allotted to East Baton Rouge Parish and the other two to Jefferson Parish, due to the mushrooming population expansion in these parishes resulting from the location there of new industries following the second World War.

violative of the equal protection clause of the Fourteenth Amendment to the United States constitution, in that it debased the voting rights of the plaintiffs and the classes they represented, and (2) a decree ordering reapportionment of the House of Representatives of Louisiana in a manner to more equitably and effectively guarantee their voting rights and proper representation.

A three-judge panel composed of Judge John Minor Wisdom of the United States Fifth Circuit Court of Appeal, and federal district judges Frank B. Ellis and E. Gordon West, on May 16, 1963, heard arguments on motions to dismiss and stay these proceedings, filed on behalf of the eleven defendants in the action, among whom were the Governor, Attorney General, and Secretary of State, and, thereafter, issued an order in which it deferred action on these motions in order to give the Louisiana legislature, then in session, an opportunity to do its own apportionment, but reserved the right to decide the motions and fix the case for an early hearing should the legislature refuse to act promptly in the matter.

When the legislature, then in fiscal session, adjourned without taking any action in the reapportionment matter.[7] the federal court denied the motions to dismiss and stay the proceedings filed by defendants and ordered a hearing on plaintiffs' application for a preliminary injunction on June 18, 1963. Prior thereto, however, the Governor called the legislature back into a special emergency session for the specific purpose of permitting the legislature to adopt a necessary measure for the reapportionment of the House of Representatives in the light of the census taken by the United States in 1960. The federal court hearing scheduled for June 28, 1963, was, therefore, continued.

After considering a number of proposed plans, the legislature, at this special session, adopted its Act No. 2, amending and re-enacting R.S. 24:35, under which the 105 members of the Louisiana House of Representatives provided for by Section 5 of Article III of the Constitution of 1921, as amended, were reapportioned in accordance with a plan recommended by the Louisiana Legislative Council, as well as the Public Affairs Research Council of Louisiana, a nonpartisan organization engaged in research in Louisiana public affairs, and the act was, the same day, June 22, 1963, approved and signed by the Governor.[8]

---

7. This was obviously to avoid any claim legislation of this character, adopted at a purely fiscal session, would be unconstitutional.

8. Under this reapportionment, representation in Ward 9 of Orleans Parish was increased from one to three members, these two additional members being taken from the representation theretofore existing in wards 3 and 11, the membership of each of which was reduced by one. Membership from East Baton Rouge Parish

The defendants then answered the suit in the federal court with what is, in effect, a general denial, attaching thereto, however, a copy of Act No. 2 of this extra session reapportioning the House of Representatives. Whereupon, on June 28, 1963, the three-judge federal court, Daniel v. Davis, D.C., 220 F.Supp. 601 in a well-considered opinion that is correlated with an analysis of the shift and increases in Louisiana population, concluded (1) that paragraphs 2 and 3 of Section 5 of Article III of the Constitution of 1921, and the same paragraphs of R.S. 24:35 prior to the adoption of Act of the extra session of 1963, invidiously discriminated "against persons and voters in certain parishes in Louisiana," and consequently, were unconstitutional, as being in contravention of the provisions of the Fourteenth Amendment to the federal constitution, whereas (2) Act No. 2 of the 1963 extra session not only met the court's constitutional test, but substantially, the demands of the plaintiffs. It therefore denied the relief sought by them.

■■■■ The argument of counsel for the plaintiffs, to the effect that a constitutional amendment is necessary before membership of the House of Representatives can be reapportioned because Section 5 of Article

III of the Louisiana constitution contains a listing of the number of members assigned to each of the wards of Orleans Parish and each of the remaining parishes of the state, is clearly without merit, as the authority of the legislature to enact legislation reapportioning its house membership has been specifically vested in that body ever since the adoption of the Constitution of 1921 by the clear and unmistakable language of Section 2 of Article III, as quoted above. Consequently, the assertion that the legislature by adopting Act No. 2 of the 1963 special session amended the constitution without submitting this matter to the electorate for ratification, as required for all constitutional amendments, is untenable.

■■■■ We also find no merit to the second contention urged as the basis for the unconstitutionality of the act under consideration for Section 3 of Article III of the Constitution of 1921 does not require the legislature to "divide the State into senatorial districts" in one and the same act, or at one and the same session, in which it reapportions the membership of the House of Representatives; furthermore, the language of Section 3 itself does not indicate any such mandate. Section 3 simply provides that "The Legislature, in every year in which

was increased from 4 to 6; that of Caddo and Jefferson parishes from 4 to 5; and that of Calcasieu from 2 to 3; while the representation from Terrebonne parish was increased from 1 to 2. These six members thus reallotted to these parish-

es, were secured by the reduction of representation in the parishes of Acadia, Avoyelles, Lafourche, Natchitoches, St. Landry, and St. Mary by one member each.

it shall apportion representation in the House of Representatives, shall divide the State into senatorial districts. * * * " There is nothing to prevent the legislature from timely complying with this mandate. In fact, without any evidence to the contrary, we are inclined to believe the legislature took the state's present senatorial divisions or districts into consideration and concluded them to be fair and equitable in the light of the 1960 United States census, thus requiring no further action on its part.

We therefore hold that Act No. 2 of the First Extraordinary Session of 1963, amending and re-enacting R.S. 24:35, is constitutional.

 The plaintiffs are in error in their claim that the legislature was without authority to take any further action in the matter of reapportionment until after the United States census of 1970, under the express provisions of Sections 2 and 6 [9] of Article III of the Constitution of 1921, enjoining the legislature from reapportioning the house membership as was done at this extra 1963 session, for the reason that it had already reapportioned the member-

ship in 1960 when it adopted as Act No. 610 its joint resolution proposing an amendment to Section 5 of Article III of the Constitution, which was approved by the electorate on November 8, 1960, and enacted Act No. 297, amending and re-enacting R.S. 24:35 to accord therewith.

In the first place, a mere reading of Act No. 610 of 1960 clearly reflects it did not have the effect of reapportioning the membership of the House of Representatives, but simply of amending Section 5 of Article III of the constitution by increasing the membership of the house from 101 to 105, two of the extra members being allotted to East Baton Rouge parish and the other two to Jefferson parish. Furthermore, the adoption of this joint resolution, and its subsequent ratification, could not have been a reapportionment of the membership of the House of Representatives after the census of 1960 had been taken, as contemplated by Section 2 of Article III, for at the time the resolution was adopted by the legislature and approved by the electorate the census for 1960 had not then been completed or promulgated, as required by appropriate congressional legislation for it to be effective. See, 13 U.S.C.A. § 141.

---

9. Section 6 of Article III provides: "This apportionment of senators and representatives shall not be changed or al-

tered in any manner until after the enumeration shall have been taken by the United States; * * *."