(No. 38848.—

THE PEOPLE *ex rel.* Robert H. Engle, Appellant, *vs.* OTTO KERNER, Governor, *et al.,* Appellees.

*Opinion filed February 4, 1965.—Rehearing denied March 18, 1965.*

Schaefer and Hershey, JJ., dissenting.

Robert H. Engle, of Chicago, *pro se.*

William G. Clark, Attorney General, of Springfield, (Richard A. Michael, Assistant Attorney General, of counsel,) for appellees.

Don H. Reuben, Lawrence Gunnels, and Jack S. Levin, for appellee William J. Scott, State Treasurer.

Mr. Justice Underwood delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Sangamon County denying relator's prayer for declaratory judgment and finding, *inter alia,* that the 1954 amendment to article IV of the Illinois constitution was validly proposed and does not violate either the constitutions of Illinois or the United States. Important questions concerning constitutional. legislative reapportionment are here presented. The cause is here directly as questions arising under both the United States and State constitutions are involved. Illinois Const. art. VI, sec. 5; Supreme Court Rule 28—1.

Relator, appellant herein, a voter, taxpayer and potential candidate for the Illinois House, instituted suit in the circuit court asking for a declaratory judgment that (1) this amendment to article IV of the Illinois constitution (article IV, secs. 6, 7, 8,) is totally invalid; (2) the 68th (1953) General Assembly proposed amendments to more than three articles of the constitution in violation of the Gateway Amendment (article XIV, section 2,); (3) the 68th Gen-

eral Assembly was without power to propose any amendment denying people equality (on a population basis) of representation in the Illinois senate or in constitutional conventions; (4) the General Assembly consists of 51 senators and 153 representatives (instead of the present 58 and 177, respectively) under the last valid reapportionment of 1901 pursuant to the constitution of 1870; and (5) the 1964 amendments to the Election Code are invalid.

The 1954 amendment to article IV specifically provides:

### ARTICLE IV

"§ 6. The General Assembly in 1955 shall redistrict the state for the purpose of electing state senators. There shall be fifty-eight senatorial districts. Cook county shall have twenty-four of the districts. These twenty-four districts shall be located as follows: Eighteen in the territory that is within the present corporate limits of the city of Chicago; and six in the territory that is in Cook county outside such corporate limits. The remaining one hundred and one counties of the state shall have thirty-four of the senatorial districts.

"All senatorial districts shall be formed of contiguous and compact territory. In their formation, area shall be the prime consideration.

"The senatorial districts shall be numbered one, two, three, and so forth, including fifty-eight. Each such district shall elect one senator, whose term of office shall be four years. Senators elected in districts bearing even numbers shall be elected in 1956 and every four years thereafter; and senators elected in districts bearing odd numbers shall be elected in 1958 and every four years thereafter.

"§ 7. The General Assembly in 1955 and in 1963, and every ten years thereafter, shall redistrict the state for the purpose of electing state representatives. There shall be fifty-nine representative districts. In the 1955 redistricting Cook County shall have thirty of the districts. These thirty districts shall be located as follows: Twenty-three in the territory that is within the present corporate limits of the City of Chicago; and seven in the territory that is in Cook County outside such corporate limits. In the 1955 redistricting, the remaining one hundred and one counties of the state shall have twenty-nine of the representative districts. In redistricting subsequent to the 1960 census, and thereafter, the fifty-nine representative districts shall be divided among (1) that part of Cook County that is within the present corporate limits of the City of Chicago,

(2) that part of Cook county that is outside such corporate limits, and (3) the remaining one hundred and one counties of the state, as nearly as may be, as the population of each of these three divisions bears to the total population of the state.

"Representative districts shall be formed of contiguous and compact territory, and shall contain, as nearly as practicable, a population equal to the representative ratio; outside of Cook County, such districts shall be bounded by county lines unless the population of any county entitles it to more than one representative district. The representative ratio for the entire state shall be the quotient obtained by dividing the population of the state by fifty-nine. No representative district may contain less population than four-fifths of the representative ratio.

"Three representatives shall be elected in each representative district in 1956 and every two years thereafter. The term of office shall be two years. In all elections of representatives aforesaid, each qualified voter may cast as many votes for one candidate as there are representatives to be elected, or may distribute the same, or equal parts thereof, among the candidates as he shall see fit; and the candidates highest in votes shall be declared elected.

"§ 8. In performing its duties under Sections 6 and 7 of this amendment, the General Assembly shall redistrict and reapportion in a single legislative enactment. If, however, the regular session of the General Assembly in 1955 as to both senatorial and representative districts or in 1963, or any ten years thereafter as to representative districts, fails by the first day of July to redistrict the state into such districts, then the redistricting shall be accomplished by a commission. Within thirty days after such first day of July, the state central committee of each of the two political parties, casting the highest votes for governor at the last preceding gubernatorial election, shall submit to the governor of the state a list of ten persons. Within thirty days thereafter, the governor shall appoint the commission of ten members, five from each list. If either of the state central committees fail to submit the list within the specified time, the governor, within the specified time, shall appoint five members of his own choice from the party of such committee. Each member of the committee shall receive $25.00 a day, but not more than $2,000 for his services.

"This commission shall redistrict the state into senatorial districts and into representative districts in the manner specified above. This commission shall file with the secretary of state a full statement of the numbers of the senatorial and representative districts and their boundaries. No such statement shall be valid unless approved by seven members of such commission.

"After such statement is filed, senators and representatives shall be elected according to the statement and the districts therein determined, until a redistricting and reapportionment are thereafter made by the General Assembly as provided in this amendment. If, however, the statement is not filed within four months after the commission is appointed it shall stand discharged. Thereupon, all senators, scheduled for election at the next election for state senators, and all state representatives shall be nominated and elected at the next election from the state at large. Following such an election at large, the General Assembly at its next regular session shall perform the duties specified in this amendment. But if such a General Assembly fails to perform these duties, then another commission, as specified in this Section 8, shall be appointed in like manner, with like duties, and power, and with like effect; and so forth until a valid senatorial and representative redistricting and reapportionment are secured in this 1950 decade and each decade thereafter. But there can be only one valid senatorial and representative redistricting and reapportionment during a particular decade."

Relator first argues that because the amendment to article IV does not *itself* provide a legislative redistricting scheme, it violates article XIV, section 2, which requires that a proposed constitutional amendment be "entered in full" on the Journals of both Houses of the legislature and "published in full" at least three months preceding the general election. It is maintained that the proposed amendment must itself describe the precise geographical boundaries of the district, as well as all other details, in order to comply with "entered and published in full" requirements. However, relator cites no provision in the constitution nor any other authority for this proposition: *i.e.* that the constitution may not establish reapportionment *standards* and leave to the General Assembly the task of devising a statutory scheme in compliance therewith. This has been the traditional method of reapportionment, and this court has held that the legislature may exercise discretion in reapportioning according to constitutional standards. (See *People ex rel. Heffernan* v. *Carlock,* 198 Ill. 150, 160-61; *People ex rel. Woodyatt* v. *Thompson,* 155 Ill. 451.) We

find nothing constitutionally offensive in the procedures here employed.

Relator next argues that the effect of section 6 of article IV of the 1954 amendment, with regard to the Senate, was to charge the succeeding General Assembly with the responsibility and the power to legislatively determine and freeze the senatorial districts, the only manner by which they might subsequently be changed being constitutional amendment, as "[o]nce the senate districts have been established, they are permanently fixed and may not be altered, revised or reallocated except by constitutional amendment. See *Donovan* v. *Holtzman,* 8 Ill.2d 87." (*People ex rel. Giannis* v. *Carpentier,* 30 Ill.2d 24, 26.) This, relator maintains, is to enable a legislature to enact merely by legislation that which may be undone only by constitutional amendment and therefore, in effect, violates the provisions of article XIV requiring a ⅔ majority vote in both houses and ⅔ majority vote of the electors concerning constitutional amendments.

However, this argument is of no real consequence, for in view of *Germano* v. *Kerner,* 378 U.S. 560, 12 L. ed. 2d 1034, wherein the United States Supreme Court reversed the district court's holding that the apportionment of the Illinois senate was constitutional and remanded the cause "for further proceedings consistent with the views stated in our opinions in *Reynolds* v. *Sims* (377 U.S. 533) and in other cases related to state legislative apportionment decided along with *Reynolds,*" it can no longer be contended that the area apportionment provisions of article IV, section 6, and its prohibitions against subsequent legislative change are valid.

Nor do we find constitutional infirmities in the contention that the Gateway Amendment (Ill. Const., art. XIV, sec. 2), has been violated by the 68th General Assembly, although relator argues that the provisions thereof were disregarded in that, while on their face the proposed con-

stitutional amendments proffered by the 68th General Assembly purported to amend only three articles, *i.e.* the canal article, the executive article, and article IV (the legislative article), the amendment to the latter article by implication amended the due process provision of article II, section 2, the free-and-equal election provision of article II, section 18, and the constitutional-convention provision, article XIV, section 1. Hence, it is maintained, amendments to more than the three-article limit were made. Since any implied amendment of the due-process and free-and-equal-election provisions is necessarily rendered nugatory by our holding that parts of article IV, section 6, are invalid, we need discuss only the undisputed implied amendment of the constitutional-convention provision.

In *City of Chicago* v. *Reeves,* 220 Ill. 274, we held that the forerunner (which prohibited the proposal by any one General Assembly of amendments to more than one article), of the Gateway Amendment applied only to express amendments and did not apply to "implied amendments or changes which were necessarily worked in other articles of the constitution by the express amendments of a particular article of the constitution." (220 Ill. at 284.) This principle is particularly applicable here, where the increase in the number of legislators in the express amendment to article IV necessarily increases the number of legislators required to call a constitutional convention and the number of delegates at such convention, and such implied changes are not, under *Reeves,* objectionable.

Relator also contends that the provisions of the Election Code dealing with the 1964 at-large representative election (S. H. A., chap. 46, par. 8A—1 *et seq.* March 1964 pamphlet) are invalid in that (1) they are based on the allegedly void 1954 constitutional amendment, and (2) that since the provisions are restricted to the year 1964, they constitute "special legislation" proscribed by article IV, section 22, of the Illinois constitution. In view of our subsequent

determination herein that the federally unconstitutional portions of the 1954 constitutional amendment do not invalidate the balance of the amendment and that, insofar as the provisions of the Election Code here under attack are restricted to the year 1964, the question is now moot, these contentions are without merit.

It should be noted that in *People ex rel. Giannis* v. *Carpentier,* 30 Ill.2d 24, we held that article IV, section 8, did not contemplate Senators running at large where there had been a failure to reapportion the House of Representatives. That decision was based substantially upon the language employed in sections 6, 7 and 8 and the principle that the constitution should wherever possible be construed to avoid irrational, absurd, or unjust consequences. (30 Ill.2d 24, 28-29.) Our statement therein regarding the immutability of the 1955 senatorial districts, while lending justification to the ultimate decision, was not necessary to the determination of the issue presented, *i.e.,* whether the Senators coming up for election in 1964 were obliged to run from the State at large. As a consequence, the invalidity above noted wrought in our constitution by a change in Federal constitutional interpretation does not affect the ultimate construction given article IV, section 8, in *Giannis.* Hence, the provisions of section 8 dealing with at-large representative elections do not govern senatorial elections.

While it is apparent that the second paragraph of section 6 is constitutionally unsound under the rationale of *Reynolds* v. *Sims,* 377 U.S. 533, 84 S. Ct. 1362, 12 L. ed. 2d 506, and that the first paragraph thereof is likewise invalid insofar as it purports to allot specified numbers of districts to various geographical areas, it does not necessarily follow that the entire amendment must fall. The principle inherent in all sections of the amendment, *i.e.*: that the State shall be divided into three principal political regions, is not obnoxious *per se* but only when the equality-of-population principle is significantly diluted (*Reynolds* v. *Sims*). As the

United States Supreme Court there said (84 S. Ct. 1390):
"A State may legitimately desire to maintain the integrity
of various political subdivisions, insofar as possible, and
provide for compact districts of contiguous territory in de-
signing a legislative apportionment scheme. Valid considera-
tions may underlie such aims. Indiscriminate districting,
without any regard for political subdivision or natural or
historical boundary lines, may be little more than an open
invitation to partisan gerrymandering." And again at page
1391: "* * * a State may legitimately desire to construct
districts along political subdivision lines to deter the possi-
bilities of gerrymandering." It is clear that the number
of districts allocable to each region cannot be frozen
into the constitution, since population changes may necessi-
tate substantial revision from time to time. We therefore
conclude that, while the first paragraph in section 6 is un-
constitutional insofar as it allocates specified numbers of
districts to designated geographical areas without reference
to population, and the second paragraph is unconstitutional
*per se,* the principle of dividing the State into three major
regions consisting of (1) the city of Chicago, (2) the por-
tion of Cook County lying outside the city of Chicago, and
(3) the balance of the State, as made manifest in the re-
maining constitutionally valid portions of the amendment,
is compulsory insofar as it can be used compatibly with the
equality-of-representation theme in any future redistricting
of the Senate.

Since it is not argued that other provisions of sections
6, 7 and 8 of article IV clash with Federal constitutional
requirements, the inquiry now becomes whether the above
noted partial unconstitutionality demands total invalidity of
these sections. This is, in turn, determined by whether the
admittedly invalid portions are independent and severable
from the other provisions and whether "it was the purpose
of the law to accomplish two or more objects." *Jackson* v.
*Blair,* 298 Ill. 605, 609; see also *People ex rel. Adamowski*

v. *Wilson*, 20 Ill.2d 568, 582; *McDougall* v. *Lueder*, 389 Ill. 141, 155; *People ex rel. Dougherty* v. *City of Rock Island*, 271 Ill. 412, 422.

We believe that sections 6, 7 and 8 manifestly satisfy the tests of independence, and hence, severability. The provisions (1) give the General Assembly the power to redistrict the House of Representatives, with express provision that the latter is to be determined on the basis of population, (2) provide for periodic reapportionment of the House (3) establish the number of senatorial and representative districts and the number of legislators to be elected from each district, (4) require that senatorial and representative districts be formed of contiguous and compact territory ,(5) provide for terms of office of the legislators and when they are to be elected, and (6) give due regard to the three separate, traditional regions of the State. The purposes sought to be achieved are clearly multiple, independent, and severable.

Relator maintains, however, that the unconstitutional portions of the amendment are of a vital nature, and that without them it cannot be said the remaining valid portions would have been enacted; hence, the entire amendment must fall. A late and controlling expression thereon is *People ex rel. Adamowski* v. *Wilson*, 20 Ill.2d 568, 582, which quotes with approval the following language in *McDougall* v. *Lueder*, 389 Ill. 141, 155: "The fact that a part of an act is unconstitutional does not require that the remainder shall be held void unless all the provisions are so connected as to depend upon each other. The valid and invalid provisions may even be contained in the same sentence and yet be perfectly distinct and separable so that the former may stand though the latter fall." We then held: "If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it

can be said that the General Assembly would not have passed the statute with the invalid portion eliminated. [Citing cases]." We believe it cannot fairly be said that, since area alone is a constitutionally impermissible basis for districting and the major geographical divisions are retained insofar as compatible with population requirements, the remaining portions of the amendment would not have been adopted. We therefore hold that, except for the first two paragraphs of section 6, the provisions of sections 6, 7 and 8 of article IV referred to above are valid, subsisting, integral parts of the Illinois constitution. It should be expressly noted here that, while we have held part of the plan evidenced by the first two paragraphs of section 6 to be invalid, the principle implicit therein and elsewhere manifest in the amendment, *i.e.* that each legislative district shall be wholly included within one of the three traditional regions of the State, still remains.

Since the portion of article IV, section 6, authorizing Senate redistricting was limited by its terms to 1955, it becomes necessary to determine whether, since there is no express constitutional provision granting power to the legislature to reapportion the Senate, the General Assembly has the power to do so. As the drafters of sections 6, 7 and 8 envisioned a permanently apportioned Senate based upon area, no reapportionment provision (other than for 1955) was necessary. See *People ex rel. Giannis* v. *Carpentier,* 30 Ill.2d 24.

It is well settled that *de facto* office-holders, as we now have in the Senate, are vested with complete authority to act as such, particularly in the absence of any *de jure* officers. (See *Lavin* v. *Comissioners of Cook County,* 245 Ill. 496, 505-06; *Harvey* v. *Sullivan,* 406 Ill. 472, 479.) This principle, applied here, is in accordance with expressions in United States Supreme Court decisions, which have *assumed* that existing State legislatures, although elected from unconstitutional districts, have full power to act.

(*Maryland Committee for Fair Representation* v. *Tawes,* 377 U.S. 656, 676; 12 L. ed. 2d 595; *Reynolds* v. *Sims,* 377 U.S. 533, 586; *Roman* v. *Sincock,* 377 U.S. 695, 699.) It would therefore seem that plenary legislative power is still vested in the General Assembly as presently constituted.

Formerly (prior to the 1954 amendments to article IV) the General Assembly had the power to reapportion its election districts. (See *Fergus* v. *Kinney,* 333 Ill. 537; *People ex rel. Fergus* v. *Blackwell,* 342 Ill. 223; *People ex rel. Woodyatt* v. *Thompson,* 155 Ill. 451; *Fergus* v. *Marks,* 321 Ill. 510). As has been stated, the 1954 amendment made it unnecessary, with regard to the Senate, for the further exercise of redistricting power by the legislature. However, this power was not expressly taken away, and, where an unanticipated change in Federal constitutional interpretation upsets the language of the Illinois constitution, we can see no reason forbidding the revitalization of this traditional and inherent reapportionment power.

We have held that our legislature has the inherent power to enact legislation not expressly prohibited by the constitution, and that, moreover, "The Illinois legislature does not look to the State constitution for power to act, but looks to it and the Federal constitution only for restrictions upon its powers to act. (*Fenske Bros. Inc.* v. *Upholsterers International Union,* 358 Ill. 239; *Nielsen* v. *City of Chicago,* 330 Ill. 301; *Taylorville Sanitary District* v. *Winslow,* 317 Ill. 25.) Every subject within the scope of civil government which is not within some constitutional inhibition may be acted upon by the General Assembly. (*Sutter* v. *People's Gas Light and Coke Co.* 284 Ill. 634.)" *Locust Grove Cemetery Ass'n* v. *Rose,* 16 Ill.2d 132, 138.

Other courts, finding themselves faced with the same dilemma here before us, have sustained the inherent power of unconstitutionally districted legislatures (because of the change in Federal law) to reapportion. (See *Maryland Committee for Fair Representation* v. *Tawes,* 228 Md. 412,

180 A. 2d 656, 670; *LeDoux* v. *Parish Democratic Executive Committee*, 244 La. 981, 156 So. 2d 48; *Harris* v. *Shanahan*, 192 Kans. 183, 387 P.2d 771; *Butteworth* v. *Dempsey* (D. Conn.), 229 F. Supp. 754; *Buckley* v. *Hoff* (D. Vermont), 234 F. Supp. 191). We hold, therefore, that the General Assembly has the power to redistrict the Senate.

It is to be observed, however, that such reapportionment and redistricting scheme as may be enacted must, in the light of the language used in *Reynolds* v. *Sims,* provide for periodic review thereof as related to interim population changes. While not purporting to establish an inflexible standard of frequency of reapportionment, that case is authority for the proposition that decennial reapportionment "would clearly meet the minimal requirements for maintaining a reasonably current scheme of legislative representation," and that reaportionment with less frequency "would assuredly be constitutionally suspect." 84 S. Ct. 1382-3, 12 L. ed. at 540.

A constitutionally valid plan of election must be completed, under *Reynolds* v. *Sims,* by 1966, and a Federal court is now being asked to remedy the malapportionment existing in the Illinois Senate (*Germano* v. *Kerner, Civil No.* 63C-291, N. D. Ill.) (on remand from the U.S. Supreme Court) in the event the General Assembly does not do so before August 2, 1965. While we trust the General Assembly will succeed in its task, we must, in view of the unfortunate 1964 House apportionment experience, (see *People ex rel. Spence* v. *Carpentier,* 30 Ill.2d 43) consider the possibility of failure.

As the final forum available in this State, it is our responsibility to construe and apply provisions of our State and the Federal constitutions as related to the problems of legislative reapportionment. We conceive it to be the responsibility of the State of Illinois to establish its own constitutionally selected legislative body, and that the State

agencies, both historically and logically, are the proper forum for resolution of the problems therein, consonant with the Federal constitutional interpretations relating to equality of representation. The highest courts of our sister States have so held in *Butcher* v. *Bloom,* 415 Pa. 438, 203 A. 2d 556; *State ex rel. Reynolds* v. *Zimmerman,* 22 Wis. 544, 126 N.W.2d 551; *Davis* v. *McCarty* (Okla.), 388 P.2d 480. Such action has been approved by the United States Supreme Court. (*Maryland Committee for Fair Representation* v. *Tawes,* 377 U.S. 656, 674, 84 S. Ct. 1429, 1439, 12 L. ed. 2d 595; *Scranton* v. *Drew,* 379 U.S. 40, 13 L. ed. 2d 107.) It is also evident that the underlying principle that State courts should be given priority in resolving similar questions was a factor motivating Congress in the enactment of subparagraph (5), section 2284, Title 28, U.S.C.A. All parties to this proceeding either request or concede that we may retain jurisdiction.

We have expressed confidence that the General·Assembly will successfully perform its duty to enact a constitutionally valid plan during its current session. Nevertheless, we retain jurisdiction of this cause for the purpose of taking such affirmative action as may be necessary to insure that the 1966 election is pursuant to a constitutionally valid plan. We do not here determine whether, in the absence of a constitutional legislatively determined plan, language in *Tawes,* and in *Lucas* v. *44th Gen. Assembly of Colorado,* 377 U.S. 713, 84 S. Ct. 1472, 12 L. ed. 2d 632, and related United States Supreme Court decisions, requires us to adopt, simultaneously, provisional reapportionment and redistricting plans for both houses.

The judgment of the Sangamon County circuit court is affirmed insofar as it does not conflict with this opinion and is otherwise reversed. Jurisdiction of this cause is retained.

*Affirmed in part and reversed in part,
and jurisdiction retained.*

Mr. JUSTICE SCHAEFER dissenting:

I agree with the opinion of the majority of the court insofar as it holds (1) that no more than three constitutional amendments were proposed by the 68th General Assembly; (2) that issues concerning the validity of those provisions of the Election Code that relate to the 1964 at-large election of representatives are now moot, and (3) that the present members of the state Senate, although elected from discriminatory districts that violate the constitution of the United States, nevertheless have *de facto* authority to act as members of the Senate of Illinois. But other conclusions are reached with which I can not agree.

The primary contention of the relator is not answered by the majority opinion. That contention is that the constitution of Illinois was not complied with in the adoption of the 1954 reapportionment amendment. The argument is that if senatorial districts once fixed by the legislature can be changed only by constitutional amendment, the districts so fixed have been made a part of the constitution without having been published and without having been submitted to and adopted by the people of the state at a referendum election, as the amending clause of the constitution requires. Constitution, art. XIV.

The opinion disposes of this contention on the ground that since the decision of the Supreme Court of the United States in *Germano* v. *Kerner,* 378 U.S. 560, "it can no longer be contended that the area apportionment provisions of article IV, section 6, and its prohibitions against subsequent legislative change are valid." But this statement does not meet the relator's contention. That contention, if sound, would completely invalidate the 1954 amendment upon the ground that the entire amendment was not submitted to and adopted by the people, as required by the constitution of Illinois. The fact that the Supreme Court of the United States has held a portion of the amendment invalid because it violates the federal constitution has nothing to do with

the relator's claim that requirements of the Illinois constitution were not complied with.

This contention of the relator is based upon the statement in *People ex rel. Giannis* v. *Carpentier*, 30 Ill.2d 24, 26, concurred in by only three members of this court, that "Once Senate districts have been established, they are permanently fixed and may not be altered, revised or reallocated except by constitutional amendment." As was pointed out in the dissent in the *Giannis* case, and as is conceded in the majority opinion in this case, no issue concerning the immutability of Senate district boundaries was before the court in the *Giannis* case. The observation as to the constitutional status of Senate districts was unnecessary to the decision and in my opinion the court should not adhere to it.

The language of the 1954 amendment contemplates senatorial, as well as representative, redistricting every ten years: "But if such a General Assembly fails to perform these duties, then another commission, as specified in this Section 8, shall be appointed in like manner, with like duties, and power, and with like effect; and so forth *until a valid senatorial and representative redistricting and reapportionment are secured in this 1950 decade and each decade thereafter. But there can be only one valid senatorial and representative redistricting and reapportionment during a particular decade."* (Italics supplied.)

If this court were to hold, in accordance with this language, that senatorial districts once established are not immutable, the relator's contention in this case would fall. But the court does not so hold. It leaves the contention unanswered, except as it refers to the legislation which prescribes district boundaries which can be changed only by constitutional amendment as "the traditional method of reapportionment." The majority opinion cites no authority whatsoever to support its assumption that legislation which can be altered only by constitutional amendment is a tra-

ditional method of reapportionment. None has been cited by the parties, and I am aware of none.

The relator's contention that the 1954 amendment violates the Illinois constitution could easily be answered by adhering to the actual language of the 1954 amendment and repudiating the *Giannis dictum* as to the immutability of Senate districts. But the court now appears to have rejected that course. I see no escape from the conclusion that, if the 1954 amendment meant that Senate districts established without having been published or submitted to a constitutional referendum, could be changed only by constitutional amendment, the relator's contention is sound and the 1954 amendment was not validly adopted under the constitution of Illinois.

Section 8 of the 1954 amendment provides that if the legislature fails to reapportion, a special commission is to be convened to do so and that if it fails one half of the Senate and all of the House must run at large. This provision was one of the most important aspects of the 1954 amendment since it was believed that this would solve the problem of legislative refusal to obey the constitutional mandate to reapportion every ten years. (See *Donovan* v. *Holzman,* 8 Ill.2d 87.) The majority opinion omits any reference to this provision when it enumerates the valid portions of the amendment. This omission, coupled with the gratuitous observation, "We do not here determine whether, in the absence of a constitutional legislatively determined plan, language in *Tawes, and in Lucas* v. *44th General Assembly of Colorado,* 377 U.S. 713, 84 S. Ct. 1472, 12 L. ed. 2d 632, and related United States Supreme Court decisions, requires us to adopt, simultaneously, provisional reapportionment and redistricting plans for both houses", and the court's retention of jurisdiction, can apparently be explained only on the ground that the majority is getting ready to read section 8 out of the constitution.

Section 8 provides explicitly what is to happen in the

event that the General Assembly fails to reapportion. The constitution of Illinois does not contemplate reapportionment by any court, state or federal. There is therefore no practical reason for the retention of jurisdiction of this case. Nor is there any legal basis for the retention of jurisdiction of this case. This is an action for a declaratory judgment, of which this court does not have original jurisdiction. The case is here on appeal from the circuit court of Sangamon County. The jurisdiction of this court ends when it has affirmed or reversed the judgment of the circuit court, or remanded the case to that court for further proceedings. The issues presented in the circuit court concerned only the November 1964 election. They did not at all involve the contingency that the General Assembly might, in 1965, fail to perform its duty. The circuit court decided only the issues that were presented to it, and those are the only issues that are actually before this court.

If the majority were to hold that the provisions of section 8 are still applicable, I would agree on the severability issue. But if, as appears to be the case, they are reading that provision out of the amendment, I can not agree that what remains is separable and valid. The majority correctly states the applicable legal principle as set forth in *People ex rel. Adamowski* v. *Wilson,* 20 Ill.2d 568, but it fails to apply that principle. The test of separability there stated is: "If what remains after the invalid portion is stricken is complete in itself and capable of being executed wholly independently of that which is rejected, the invalid portion does not render the entire section unconstitutional unless it can be said that the General Assembly would not have passed the statute with the invalid portion eliminated." (20 Ill.2d at 582.) The majority opinion completely ignores the second portion of the test.

As I read that opinion the only new provisions embodied in the 1954 amendment that certainly remain valid are those which increase the number of senatorial and representative

districts and those which provide that in establishing legislative districts some districts are to be allocated to the city of Chicago, some to ·the county of Cook outside the city of Chicago, and some to the remaining counties of the state. Certainly the General Assembly in 1953 would not have proposed, nor would the people in 1954 have ratified, a constitutional amendment that made only those relatively insignificant changes in the existing constitution. The suggestion that such an amendment would have been adopted disregards the serious problem that had confronted the state since 1911.

That problem was described in the official explanation of the proposed amendment:

"The Constitution now requires legislative districts to be based solely on population. This has proved unworkable ever since the 1910 census because a valid redistricting would have given the single county of Cook a majority in both houses of the General Assembly. * * *

"Illinois badly needs a legislative redistricting. The present districts stand as they were created half a century ago. As a result, serious inequalities of population have developed, not only as between Cook County and downstate, but even within these major areas of the State. The apportionment amendment tends to assure the people of a constitutional districting because if the General Assembly fails to act, a commission is provided; and if the commission fails to act, legislators will be elected at large." Quoted in *Donovan* v. *Holzman,* 8 Ill.2d 87, 92.

The majority opinion enumerates six purposes sought to be achieved by the 1954 amendment, and describes them as "clearly multiple, independent, and severable." Five of these purposes were not new, but were contained in the constitution as it existed before the 1954 amendment. Power to redistrict the House of Representatives on the basis of population, a provision for periodic apportionment, a provision establishing the number of senatorial and representa-

tive districts and the number of legislators to be elected from each district, a requirement that legislative districts be formed of contiguous and compact territory, and provisions for the terms of office and the times of election of legislators—all these were contained in article IV of the constitution of 1870 prior to its amendment in 1954.

It simply can not be said that repetition of existing provisions was the purpose of the 1954 amendment. In no way would the solution of the problem that confronted the state have been advanced by an amendment that included only these provisions. The sixth of the purposes of the amendment as described by the majority was new—to "give due regard to the three separate traditional regions of the State." But no one would have regarded that provision, standing alone without the unconstitutional discrimination it was designed to implement, as of any significance in terms of the problem facing the people.

Although the opinion ·describes the purposes of the amendment, apart from its unconstitutional discriminatory provisions, as primarily the re-enactment of existing provisions of the 1870 constitution, it omits the provision for automatic redistricting contained in article 8. It has not been suggested by anyone that this provision is invalid. The official explanation quoted above, as well as all the other contemporaneous explanations, emphasize the vital importance of this provision. (*See People ex rel. Giannis* v. *Carpentier,* 30 Ill.2d 24, 35.) No reason for its omission is suggested. If any part of the 1954 amendment remains valid, that provision remains.

Mr. JUSTICE HERSHEY joins in this dissent.